No. 14-56615 [DC# 2:13-cv-02605]

UNITED STATES COURT OF APPEALS FOR
THE NINTH CIRCUIT

SIGITAS RAULINAITIS

Plaintiff-Appellant,

*v.*

VENTURA COUNTY SHERIFF'S
DEPARTMENT, et al.,

Defendant-Appellee.

**APPELLEE'S SUPPLEMENTAL
EXCERPT OF RECORD
VOLUME I**

On Appeal from the United States District Court
For the Central District of California
Hon. Margaret A. Nagle

LEROY SMITH, CSB 107702
County Counsel, County of Ventura
MARINA PORCHE, CSB 162809
Assistant County Counsel
800 South Victoria Avenue, L/C #1830
Ventura, California 93009
Telephone: (805) 654-2583
Fax: (805) 654-2185
E-mail: marina.porche@ventura.org

# SUPPLEMENTAL EXCERPT OF RECORD, VOLUME I

| District Court Docket Document No. | Description | Page |
|---|---|---|
| 75. | Judgment by Magistrate Judge Margaret A. Nagle, Related To: Order Granting and Denying Motions for Summary Judgment and Dismissing Case | 5 |
| 66. | Minute Order in Chambers by Magistrate Judge Margaret A. Nagle Regarding Summary Judgment Motions | 6 |
| 50. | Minutes of Order Regarding Status Conference and Scheduling by Magistrate Judge Margaret A. Nagle | 7 |
| 28. | Order Denying Motion for Summary Judgment by Magistrate Judge Margaret A. Nagle | 9 |
| 23. | Plaintiff's Sur Reply Re Motion for Summary Judgment | 34 |
| 22. | Defendant's Reply Brief | 36 |
| 21. | Notice of Filing of Sealed Exhibits | 43 |
| 20. | Plaintiff's Response Re Motion for Summary Judgment | 44 |
| 19. | Order Removing Certain Exhibits from Central District's Website Docket and Permitting Them To be Re-filed Under Seal by Magistrate Judge Margaret A. Nagle | 52 |
| 17. | Joint Stipulation to Remove Exhibits from Central District Website and to Allow Them to be Filed Under Seal | 54 |

| District Court Docket Document No. | Description | Page |
|---|---|---|
| 16. | Defendant's Responsive Brief; Memorandum of Points and Authorities; Declaration of Daniel Gonzales and Exhibits in Support Thereof | 58 |
| 15. | Plaintiff's Notice of Lodging Original Declaration | 75 |
| 13. | Plaintiff's Motion for Summary Judgment; Opening Brief; Declaration of Sigitas Raulinaitis; | 78 |
| 12. | Case Management Order by Magistrate Judge Margaret A. Nagle | 86 |
| 11. | Joint Case Management Statement and Factual Stipulation | 88 |
| n/a | PACER docket from U.S. District Court Case No. 2:11-cv-08026-MWF-JCG, *Sigitas Raulinaitis v. Los Angeles County Sheriff's Department* | 92 |

**SUPPLEMENTAL EXCERPT OF RECORD**
**FILED UNDER SEAL**
**VOLUME II**

**District Court**
**Docket**

| Document No. | Description | Page |
|---|---|---|
| 21. | Sealed Exhibits Pursuant to 6/17/13 Court Order (with sealed Exhibits C through J) | 105 |

1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**
9                          **CENTRAL DISTRICT OF CALIFORNIA**
10
11   SIGITAS RAULINAITIS,                    )   NO. CV 13-2605-MAN
12              Plaintiff,                    )
                                             )
13         v.                                )   JUDGMENT
                                             )
14   VENTURA COUNTY SHERIFFS                 )
     DEPARTMENT,                             )
15                                           )
              Defendant.                     )
16   _____)
17
18
19         Pursuant to the Court's Order Granting And Denying Motions For Summary Judgment And
20   Dismissing Case,
21
22         IT IS ADJUDGED that plaintiff take nothing, that the action is dismissed on the merits and
23   with prejudice, and that defendant shall recover its costs.
24
25   DATED: September 30, 2014.
26                                               *Margaret a. Nagle*
27                                          _____
                                                 MARGARET A. NAGLE
28                                          UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-2605-MAN | Date | July 23, 2014 |
|---|---|---|---|

| Title | *Sigitis Raulinaitis v. Ventura County Sheriffs Department* |
|---|---|

Present: The Honorable   Margaret A. Nagle, United States Magistrate Judge

| Earlene Carson | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorney Present for Plaintiff: | Attorney Present for Defendant: |
|---|---|
| Jonathan W. Birdt | Jeffrey Held |

**Proceedings:**       Order Regarding Summary Judgment Motions

In response to an inquiry of this date from plaintiff's counsel regarding the status of both plaintiff's motion for summary judgment [Docket No. 53] and defendant's motion for summary judgment [Docket No. 60], the parties are advised that both motions have been under submission since June 3, 2014, as no reply was filed by defendant to "Plaintiff's Opposition To Motion For Summary Judgment And Reply Brief Re Motion for Summary Judgment" filed on June 3, 2014 [Docket No. 65].

The parties are further advised that, because plaintiff did not file and serve, along with his opposition to defendant's motion for summary judgment, "a separate document containing a concise 'Statement of Genuine Disputes' setting forth all material facts as to which it is contended there exists a genuine dispute necessary to be litigated," in accordance with Local Rule 56-2, the Court "may assume that the material facts as claimed and adequately supported by [defendant in his "Statement Of Uncontroverted Facts And Conclusions of Law . . ." filed on June 3, 2014; Docket No. 61] are admitted [by plaintiff] to exist without controversy," in accordance with Local Rule 56-3.

IT IS SO ORDERED.

_____ : _____

Initials of Preparer   efc

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-2605-MAN | Date | April 22, 2014 |
|---|---|---|---|

| Title | *Sigitis Raulinaitis v. Ventura County Sheriffs Department* |
|---|---|

| Present: The Honorable | Margaret A. Nagle, United States Magistrate Judge |
|---|---|

| Earlene Carson | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorney Present for Plaintiff: | Attorney Present for Defendant: |
|---|---|
| Jonathan W. Birdt | Jeffrey Held |

**Proceedings:**   Order Regarding Status Conference And Scheduling

A telephonic Status Conference was held today. The status of defendant's consideration of plaintiff's application for a concealed weapons permit was discussed. With respect to plaintiff's pending ex parte application for a temporary restraining order, etc. ("Application"), the parties were afforded the opportunity to present additional argument, and the Court advised them that a ruling on the Application will issue this week.

The Court advised plaintiff that, if he wishes to seek reconsideration of the Court's Order of December 31, 2013, denying plaintiff's motion for summary judgment, the Court would permit him to do so notwithstanding the otherwise untimely nature of such a reconsideration request. Plaintiff advised that he does not wish to seek such reconsideration.

With respect to defendant's pending motion for judgment on the pleadings, etc., the Court noted that, as it advised the parties through prior written orders, the motion is defective and it will be denied. The Court suggested that defendant may wish to withdraw this motion.

The Court then discussed with the parties various scheduling matters, and the following deadlines and dates were agreed upon:

| July 3, 2014 | Discovery Cutoff |
|---|---|
| July 11, 2014 | Discovery Motion Filing Cutoff |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-2605-MAN | Date | April 22, 2014 |
|---|---|---|---|

| Title | *Sigitis Raulinaitis v. Ventura County Sheriffs Department* |
|---|---|

| August 1, 2014 | Summary Judgment Motion Filing Date[1] |
|---|---|
| October 6, 2014 | Trial Briefs, Witness Lists, and Exhibits Lists due |
| October 8, 2014 | Pretrial Conference, 10:00 a.m. (following the Court's review of the October 6 submissions, the parties will be advised if this conference will be required and whether it will proceed telephonically) |
| October 15, 2014 | Trial, 10:00 a.m. (two days allocated) |

Defendant is to advise the Court promptly, through an e-mail sent to the Chambers e-mail address, once defendant has acted upon plaintiff's pending application. Once the Court learns of defendant's decision, a Status Conference may be scheduled to discuss further proceedings in this action.

IT IS SO ORDERED.

                                                    :    32

Initials of Preparer   efc

---

[1]     If the parties file cross-motions for summary judgment, they must be filed on this date and set for hearing on September 2, 2014, at 1:00 p.m. The Court suggested that the parties file cross-motions, so that it will be possible to dispose of this action fully through the summary judgment procedure.

1

2                                                                          O

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   **SIGITAS RAULINAITIS,**          )     **NO. CV 13-2605-MAN**
                                       )
12                **Plaintiff,**       )
                                       )
13           v.                        )     **ORDER DENYING MOTION FOR SUMMARY**
                                       )     **JUDGMENT**
14   **VENTURA COUNTY SHERIFFS**       )
     **DEPARTMENT,**                   )
15                                     )
                  **Defendant.**       )
16   _____ )

17

18        Presently before the Court is plaintiff's motion for summary judgment.  For the reasons set

19   forth below, the Court concludes that summary judgment is not warranted.

20

21                          **PROCEDURAL HISTORY**

22

23        On April 15, 2013, plaintiff filed a civil rights complaint, pursuant to 42 U.S.C. § 1983

24   ("Complaint").  The sole defendant sued is the Ventura County Sheriff's Office (named in the

25   Complaint as the Ventura County Sheriff's Department) (hereafter, the "VCSO" or "defendant").

26   The Complaint alleges a single claim based on the VCSO's March 18, 2013 denial of plaintiff's

27   application for a permit to carry a concealed weapon.  Plaintiff contends that the VCSO's denial

28   of plaintiff's application has deprived plaintiff of his Second Amendment right to keep and bear

1  arms for the purpose of self defense.  As relief, plaintiff seeks an order requiring the VCSO to
2  issue a permit to carry a concealed weapon to plaintiff, as well as an award of costs and attorney's
3  fees pursuant to 42 U.S.C. § 1988.

4

5  On May 6, 2013, defendant VCSO filed an Answer to the Complaint.  On May 9, 2013, the
6  parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R.
7  Civ. P. 73(b).

8

9  On May 28, 2013, the parties filed a Joint Case Management Statement And Factual
10  Stipulation, in which they address, *inter alia*, some of their respective legal and factual
11  contentions, several stipulated facts, and two disputed legal issues.  On May 31, 2013, the Court
12  issued a Case Management Order, which found that the following facts are deemed admitted by
13  all parties:

14

15  a.  Plaintiff applied for and was denied a permit for a concealed weapon by
16      defendant, because he was not a resident of Ventura County.

17

18  b.  Defendant defines residence as:  The County in which a person spends most
19      of his or her time and conducts most of his or her activities.

20

21  c.  Defendant determined that plaintiff did not meet the standards for this
22      definition, and plaintiff agrees that he does not meet the terms of this
23      definition.

24

25  d.  Plaintiff owns and maintains a home in Ventura County.  Plaintiff also
26      maintains homes in Los Angeles and San Bernardino County.

27

28  On June 3, 2013, plaintiff filed a motion for summary judgment, pursuant to Rule 56 of the

2

1  Federal Rules of Civil Procedure, an opening brief, and an unsigned declaration of plaintiff
2  ("Motion").  The Motion was not accompanied by a separate statement of uncontroverted facts
3  and conclusions of law as required by Local Rule 56-1.  On June 5, 2013, plaintiff lodged his
4  original signed declaration dated June 3, 2013 ("Plaintiff Decl.").

5

6      On June 14, 2013, defendant filed an opposition to the Motion, which included:  a
7  responsive brief; the May 2013 declaration of Daniel Gonzales, a VCSO deputy sheriff ("Gonzales
8  Decl."); and Exhibits A-J (collectively, the "Opposition").  The Opposition was not accompanied
9  by a statement of genuine disputes as required by Local Rule 56-2, presumably due to plaintiff's
10  failure to comply with Local Rule 56-1.  On June 17, 2013, the parties filed a stipulation to remove
11  Exhibits C through J of the Opposition from the Court's public website and to allow them to be
12  filed under seal.  On June 17, 2013, the Court issued an Order granting the requested relief and
13  Exhibits C through J were filed under seal on June 19, 2013.[1]

14

15      On June 19, 2013, plaintiff filed a reply, which contained a one-page Objection to the
16  Gonzales Declaration ("Reply").  On June 28, 2013, defendant filed a reply.  On the same day,
17  plaintiff filed a sur-reply.  Briefing on the Motion, thus, is complete.

18

19                              **THE APPLICABLE LEGAL STANDARDS**

20

21      Summary judgment is appropriate when the evidence demonstrates that there is no
22  genuine dispute as to any material fact and that the moving party is entitled to judgment as a

23  _____

24      [1]  The Court granted the parties' request to file these exhibits under seal because some
25  of them contained information that could be deemed private or sensitive, such as personal
   information about plaintiff and his wife, including telephone numbers, addresses, copy of drivers'
26  license and other DMV information, photographs, vehicle records, etc.  However, some of the
   information included within the documents filed under seal is not private or sensitive.  To resolve
27  the Motion, the Court has considered all of the sealed exhibits, but discusses herein only such
   information contained within the exhibits as would not be subject to sealing had it been submitted
28  on its own.

                                          3

1  matter of law.  Fed. R. Civ. P. 56(a).  In a trio of 1986 cases, the Supreme Court clarified the
2  applicable standards for summary judgment.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106
3  S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505,
4  2510 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct.
5  1348, 1355 (1986).  The moving party bears the initial burden of informing the court of the basis
6  for the motion and identifying portions of the pleadings, depositions, answers to interrogatories,
7  admissions, affidavits, or other evidence that it believes demonstrate the absence of a triable issue
8  of material fact.  Celotex, 477 U.S. at 323, 106 S. Ct. at 2552.  A moving party without the
9  ultimate burden of persuasion at trial may carry its initial burden of production by one of two
10  methods.  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir.
11  2000).  "The moving party may produce evidence negating an essential element of the nonmoving
12  party's case, or, after suitable discovery, the moving party may show that the nonmoving party
13  does not have enough evidence of an essential element of its claim or defense to carry its ultimate
14  burden of persuasion at trial."  *Id.*  The moving party, however, need not disprove the other
15  party's case.  Celotex, 417 U.S. at 323-24, 106 S. Ct. at 2553.

16

17          Once the moving party has met its burden, the burden shifts to the nonmoving party to
18  establish, beyond the pleadings, that there is a genuine issue for trial.  Celotex, 477 U.S. at 324,
19  106 S Ct. at 2553.  The nonmoving party must submit some evidence establishing the elements
20  essential to that party's case, and for which that party will bear the burden of proof at trial.  *Id.*
21  at 322, 106 S Ct. at 2552.  The nonmoving party is "required to present significant probative
22  evidence tending to support [his] allegations."  Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir.
23  2007) (internal quotation marks omitted).  When assessing whether the nonmoving party has
24  raised a genuine issue, the court must believe the nonmoving party's competent evidence and
25  draw all justifiable inferences in its favor.  Anderson, 477 U.S. at 255, 106 S. Ct. at 2513.  Even
26  if the nonmoving party produces direct evidence of a material fact, inferences may be drawn from
27  such evidence as to *other* material facts "only if they are reasonable in view of other undisputed
28  background or contextual facts and only if such inferences are otherwise permissible under the

4

1  governing substantive law." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626,

2  631-32 (9th Cir. 1987). "The mere existence of a scintilla of evidence" is insufficient to raise a

3  genuine issue of material fact. Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. When the record,

4  taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is

5  no genuine issue for trial. Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356; see also T.W. Elec.

6  Serv., 809 F.2d at 631 ("the court's ultimate inquiry is to determine whether the 'specific facts'

7  set forth by the nonmoving party, coupled with undisputed background or contextual facts, are

8  such that a rational or reasonable jury might return a verdict in its favor based on that evidence").

9

10                    **SUMMARY OF EVIDENCE PRESENTED BY PARTIES**

11

12          As noted above, the following facts are deemed admitted in this case: the VCSO denied

13  plaintiff's application for a concealed weapons permit ("CWP") on the ground that plaintiff is not

14  a resident of Ventura County; plaintiff does not meet the VCSO's definition of "resident," i.e., a

15  person who spends most of his or her time and conducts most of his or her activities within

16  Ventura County; and plaintiff owns and maintains homes in Ventura, Los Angeles, and San

17  Bernardino Counties.

18

19          The only additional evidence submitted by plaintiff is his declaration, in which he asserts

20  the following facts. In June 2012, plaintiff purchased a home in the City of Oxnard, which is

21  within Ventura County, and moved his personal effects into the home (the "Oxnard Home").

22  Other than family members and invited guests, no one else rents or uses the Oxnard Home.

23  Plaintiff maintains and pays for the utilities for the Oxnard Home. (Plaintiff Decl. ¶ 2.) On an

24  unspecified date after June 2012, plaintiff "updated [his] voter registration to Ventura County,"[2]

25  and he intends to vote in the next election for the Ventura County Sheriff and any other election

26  in Ventura County. (Id. ¶¶ 2-3.) Plaintiff considers the Oxnard Home to be "one of" his

27  ───────────────

28          [2]      In its Answer, the VCSO admits that plaintiff registered to vote in Ventura County
"on the day of his interview with detectives." As discussed infra, that date was February 20, 2013.

                                                    5

1   permanent homes and a place to which he always intends to return and frequently does return.

2   Plaintiff owns homes in two other counties and frequently travels for business and pleasure. (*Id.*

3   ¶¶ 4-5.) Because plaintiff's personal and professional life is of a "variable nature," there is no one

4   County in California in which he spends the majority of his time. (*Id.* ¶ 6.)[3]

5

6       Defendant has submitted the Gonzales Declaration and Exhibits A through J, which

7   establish the following facts. Gonzales is a deputy sheriff of the VCSO. He is responsible for

8   evaluating CWP applications submitted in Ventura County. The VCSO receives 20 to 40 new CWP

9   applications a month, plus renewal applications, which Gonzales must evaluate with limited

10  assistance. (Gonzales Decl. ¶¶ 2, 7.) To process this volume of applications efficiently, Gonzales

11  first examines whether an applicant satisfies the residency requirements for a CWP.[4] If the

12  residency requirement is not satisfied, Gonzales saves time and work, because he need not

13  conduct an assessment of the additional good cause and good moral character requirements for

14  obtaining a CWP. (*Id.* ¶ 8.)

15

16      On January 15, 2013, Plaintiff submitted his application for a CWP to the VCSO (the

17  "Application"), and Gonzales was responsible for investigating the Application. (Gonzales Decl.

18  ¶ 4.)   Gonzales interviewed plaintiff on February 20, 2013. During the interview, plaintiff

19  indicated that: he had obtained a CWP from Arizona six months earlier; and in October 2010, he

20  had applied for a CWP from Los Angeles County but his application was denied on the ground that

21  good cause was lacking. (*Id.* ¶ 10, Ex. C at 1.) Plaintiff stated that he is employed as a

22  _____

23      [3]   In his Reply (at 5, 6), plaintiff makes various factual assertions that lack any
     evidentiary support. Because these allegations are unsupported, they have not been considered,
24   although the Court notes that, even if they had been properly supported by evidence, the Court's
     conclusions would not be different.
25

26      [4]   As Gonzales notes, and as discussed in more detail *infra*, California Penal Code
     § 26150(a)(3) contains a residency requirement that must be met before a CWP can be issued.
27   (Gonzales Decl. ¶ 5.) The VCSO has promulgated a policy, adopted on October 28, 2011,
     regarding the policy and practices of the VCSO with respect to CWPs, which also includes a
28   residency requirement. (*Id.* ¶ 6, Ex. B (first page of that seven-page policy).)

6

1  contractor, broker, and attorney; his office is in Burbank; but most of his work involves

2  contracting, which he performs "all over" in multiple California counties. (*Id.* at 4-5.) Plaintiff

3  further stated that his wife was living in their Santa Clarita home (located in Los Angeles County),

4  which they were then remodeling and getting ready to place on the rental market. (*Id.* at 3, 5.)

5  Plaintiff indicated that his son lived in the Oxnard Home with plaintiff,[5] and plaintiff's wife "spent

6  a better part of the summer" at the one-bedroom Oxnard Home with plaintiff, because it is cooler

7  than their Santa Clarita home.  During the winter, plaintiff and his wife also "go a lot" to their

8  home in Big Bear (located in San Bernardino County). (*Id.* at 5.)  When asked how much time

9  he had spent at the Oxnard Home during the past month, plaintiff replied "probably just several

10  days," because he had been spending more time in Santa Clarita while working there.[6] (*Id.*)

11  When Gonzales disclosed that his investigation to date indicated plaintiff spent more time in Santa

12  Clarita than in Ventura County, plaintiff responded,  "[W]ell I would say over the past 4 months

13  that's true but I would say over the you know, after I bought the [Oxnard Home] I was over

14  [there] probably literally four months almost all the time." (*Id.* at 6.)  Plaintiff stated that he was

15  registered to vote in Ventura County, and he changed his registration to vote at the same time

16  he changed his address with the DMV. (*Id.*)

17

18      Gonzales advised that he would be conducting a further investigation, because it appeared

19  that plaintiff did not spend as much time in Ventura County as he did in Santa Clarita. (Gonzales

20  Decl., Ex. C at 6.)  Plaintiff responded, "[L]ike I said[,] currently that would be true[;] it's my

21  intention to get [the Santa Clarita home] rented out then I will be[,] I can't say that's not true at

22  the current moment." (*Id.* at 7.)  Plaintiff then said that, had the interview taken place in July or

23  August, he would have responded that, over the past three months, he was at the Oxnard Home

24

---

25       [5]    Plaintiff stated that he slept in the bedroom and his son slept in the living room.

26  (Gonzales Decl., Ex. C at 6.)  Plaintiff paid all the utility bills for the Oxnard Home. (*Id.*)

27       [6]    During the interview, plaintiff at times referred to Canyon Country and at other times

28  to Santa Clarita.  Canyon Country is an area within Santa Clarita, and it appears that plaintiff's references to "Canyon Country" were to his Santa Clarita home.

1   80 percent of the time and at his Santa Clarita home 20 percent of the time. (*Id.*) Plaintiff stated

2   that under the Ventura Sheriff's definition of residence as explained by Gonzales -- *i.e.,* "where

3   you sleep" and "where you spend most of your time" -- plaintiff's residency varied "depending on

4   the time of year." (*Id.*)

5

6        At the time Gonzales conducted his investigation concerning plaintiff's Application, plaintiff's

7   driver's license listed his place of work as a Burbank address.  (Gonzales Decl. ¶ 11, Ex. D.)

8   California DMV records showed that two of plaintiff's cars were registered to his Santa Clarita

9   home address, and his other two cars were registered to the Burbank work address. (*Id.* ¶ 12,

10  Exs. E-H.)  The Application listed the address for the Oxnard Home as plaintiff's residence address,

11  the Burbank business address as plaintiff's mailing address, and the Santa Clarita home address

12  as his wife's address.  (*Id.* ¶ 14, Ex. I at 5.)

13

14       During his investigation, Gonzales learned that, about a year and a half earlier, plaintiff had

15  sued Los Angeles County for denying him a CWP.  When plaintiff applied for a CWP in Los Angeles

16  County, he necessarily would have claimed that he was a resident of Los Angeles County, or had

17  his principal place of business or employment in Los Angeles County, to qualify for a CWP.

18  (Gonzales Decl. ¶7.)[7]

19

20       Gonzales confirmed that plaintiff had not registered to vote in Ventura County until

21  February 20, 2013, the same day he was interviewed by Gonzales.  Prior to that date, plaintiff was

22

23  _____

24       [7]    Plaintiff listed that lawsuit in the Application. (Gonzales Decl., Ex. C at 2.)  Pursuant
    to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of its records and files

25  in that lawsuit -- Raulinaitis v. Los Angeles County Sheriffs Department, et al., CV 11-8026-MWF
    (JCG).  In that case, both plaintiff and his wife filed a civil rights complaint in this district after the

26  Los Angeles Sheriffs Department denied their applications for a CWP on the ground that the good
    cause requirement was not met.  Plaintiff and his wife claim that the Los Angeles Sheriff's policy

27  regarding the "good cause" requirement violates the Second Amendment.  On August 13, 2012,
    the defense motion for summary judgment was granted.  Plaintiff and his wife appealed, and their

28  appeal is pending (Ninth Circuit Case No. 12-56508).

8

1  not registered to vote in Ventura County.  (Gonzales Decl. ¶ 31.)

2

3       To address the residency issue, Gonzales conducted surveillance of plaintiff's Santa Clarita

4  home on January 28, 2013.  From his car, Gonzales observed plaintiff leave the Santa Clarita

5  home at 6:43 a.m., load a cooler into his Infiniti parked in the driveway, and drive to his Burbank

6  office address.  (Gonzales Decl. ¶¶ 16-23.)  Gonzales asked one of his fellow investigators

7  (Reserve Deputy Jones) to conduct a similar surveillance.  Jones reported to Gonzales that, on

8  February 1, 2013, at 6:42 a.m., Jones observed plaintiff leave the Santa Clarita home and get into

9  his Infiniti.  (*Id.* ¶¶ 24-27.)  Gonzales also spoke to the property manager for the condominium

10  complex in which the Oxnard Home is located and was advised that the property manager was

11  told by plaintiff's wife that she and plaintiff were renting the condominium to their son.  (*Id.* ¶

12  30.)[8]

13

14       Gonzales concluded that, based on the results of his investigation, "it was not reasonable

15  to conclude that [plaintiff] was a Ventura County resident."  The Application was denied on that

16  ground alone, and thus, Gonzales was not required to investigate the additional good cause and

17  moral character requirements.  (Gonzales Decl. ¶¶ 9, 32.)

18  ///

19  ///

20  ///

21  _____

22      [8]    Plaintiff has objected, on hearsay grounds, to the portions of the Gonzales
Declaration setting forth what Gonzales was told by Jones and the condominium complex property

23  manager.  In his Declaration, Gonzales makes clear that this information formed a part of his
conclusion that plaintiff was not a Ventura County resident.  (Gonzales Decl. ¶ 32.)  The Court has

24  considered this information not for its truth -- *i.e.,* not to establish that plaintiff and his wife, in
fact, rent the Oxnard Home to their son and/or that plaintiff left the Santa Clarita home on the

25  morning of February 1, 2013 -- but rather, to the extent it formed a part of and/or the basis for
defendant's decision challenged here.  Accordingly, plaintiff's objections to Paragraphs 24-28 and

26  30 of the Gonzales Declaration are overruled.  Plaintiff's objection to Paragraph 29 of the Gonzales

27  Declaration also is overruled.  Even if, as plaintiff claims, this paragraph misstates other evidence,
this is an argument that goes to the weight of the evidence proffered in the declaration, not its

28  admissibility.

1

2

**DISCUSSION**

3     In the Motion, plaintiff contends that he meets the definition of "resident" set forth in the

4 CWP statute at issue (discussed below), but that the VCSO has improperly supplanted its own

5 definition of the term "resident" for that intended by the California Legislature.  Plaintiff asserts

6 that the VCSO errs in construing the CWP statute to require that, in order to satisfy the statutory

7 residency requirement, an applicant have a status akin to that of a domiciliary under California

8 law.  Plaintiff further asserts that, by applying the CWP statute in an allegedly more stringent

9 manner than permitted under California law, the VCSO has violated plaintiff's Second Amendment

10 right to bear arms for self-defense purposes.  Finally, plaintiff argues that, if the Court agrees the

11 VCSO utilized an erroneous interpretation of the term "resident" in denying the Application, the

12 VCSO should be precluded from any further consideration of the Application, must grant the

13 Application, and issue him a CWP.

14

15     A.     The Governing Statute

16

17     California Penal Code § 26150 governs CWP applications made to county sheriffs ("Section

18 26150").  Section 26150 provides that a county sheriff "may" issue a CWP to a person upon proof

19 of four elements:  (1) the applicant is of good moral character; (2) good cause exists for the

20 issuance of the CWP; (3) the applicant is a resident of the county or the applicant's principal place

21 of employment or business is within the county and the applicant spends a substantial period of

22 time in that place of employment or business; and (4) the applicant has completed a course of

23 training as specified in another statute.  The first clause of element (3) is the provision at issue

24 here.

25

26     By its terms, Section 26150 requires that an applicant must either be a "resident" of the

27 county in which he submits his application ("prong 1") or be employed or conduct business within

28 that county and spend a substantial portion of his time there performing such work ("prong 2").

10

1   Section 26150 does not contain a definition for "resident" (prong 1), nor is such a definition set
2   forth in Part 6 (Control of Deadly Weapons), Title 4 (Firearms), Division 5 (Carrying Firearms), and
3   Chapter 4 (License to Carry A Pistol, etc.) of the California Penal Code, of which Section 26150
4   is a part. Part 6 does contain a definition for prong 2, which is set forth in California Penal Code
5   § 17020 and defines "principal place of employment or business" in a manner similar to the
6   language of Section 26150, namely, by requiring that the applicant be "physically present in the
7   jurisdiction during a substantial part of the applicant's working hours for purposes of that
8   employment or business."

9

10   Plaintiff does not contend that he satisfies prong 2. Rather, he contends that he satisfies
11   prong 1 -- *i.e.,* that he was a "resident" of Ventura County when he submitted the Application --
12   based upon his interpretation of the term "resident." Defendant contends that plaintiff is not a
13   "resident" of Ventura County under its interpretation of the term, and plaintiff concedes that he
14   does not fall within the scope of defendant's definition of "resident" for purposes of Section 26150.
15   Thus, the threshold, and fundamental, issue presented by the Motion is whether the VCSO
16   correctly interprets the term "resident" for purposes of CWP applications.[9]

17

18

_____

19   [9]      To prevail on his Section 1983 claim, plaintiff must show that defendant VCSO, a
20   municipal entity, caused plaintiff's injury pursuant to a municipal policy or custom. *See* Monell v.
      New York City Dep't of Social Servs., 436 U.S. 658, 690-91, 694, 98 S. Ct. 2018 (1978). The
21   Monell "policy or custom" requirement applies both to claims for damages and those that seek
      only prospective relief. Los Angeles Cnty., Cal. v. Humphries, ___ U.S. ___, 131 S. Ct. 447, 451-
22   54 (2010).

23

24           The Complaint does not include any allegations related to the Monell "policy or
      custom" requirement, and neither party has addressed the Monell issue in their briefing.
25   However, the parties have stipulated as to defendant VCSO's definition of the term "resident," and
      there is no dispute that the Application was denied because plaintiff does not meet that definition.
26   In addition, defendant has produced a copy of the first page of the VCSO's written "Policy"
      regarding the issuance of CWPs. Thus, the evidence before the Court appears to be sufficient to
27   establish that there is no genuine dispute as to any material fact with respect to the Monell "policy
      or custom" requirement in this case and that the denial of the Application was pursuant to a VCSO
28   policy.

11

1          B.      The History Of The Term "Resident" As Used In Section 26150

2

3          In Smith v. Smith, 45 Cal. 2d 235, 288 P.2d 497 (1955), the California Supreme Court

4    interpreted the term "resident" as used in a California statute related to a court's power to enter

5    judgment against a California "resident" who is served with process while in another state.  The

6    defendant, against whom a default judgment had been entered following personal service upon

7    him in New York, argued that the statute's use of the term "resident" did not mean domicile but,

8    rather, meant "residence in fact."  The California Supreme Court noted the word "resident" was

9    not specifically defined within the statute at issue, or by case law interpreting that statute, and

10   concluded that, in such a circumstance, its meaning must be determined by the court. 45 Cal. 2d

11   at 239.

12

13         The Smith Court then observed:

14

15         Courts and legal writers usually distinguish "domicile" and "residence," so that

16         "domicile" is the one location with which for legal purposes a person is considered

17         to have the most settled and permanent connection, the place where he intends to

18         remain and to which, whenever he is absent, he has the intention of returning, but

19         which the law may also assign to him constructively; whereas "residence" connotes

20         any factual place of abode of some permanency, more than a mere temporary

21         sojourn.  "Domicile" normally is the more comprehensive term, in that it includes

22         both the *act* of residence and an *intention* to remain; a person may have only one

23         domicile at a given time, but he may have more than one physical residence

24         separate from his domicile, and at the same time.

25

26   Smith, 45 Cal. 2d at 239 (*citing* two secondary sources).  The California Supreme Court noted,

27   however, that "statutes do not always make this distinction in the employment of those words"

28   and "frequently use 'residence' and 'resident' in the legal meaning of 'domicile' and 'domiciliary,'

                                              12

1   and at other times in the meaning of factual residence or in still other shades of meaning." *Id.*
2   The California Supreme Court then listed four California statutes in which "'residence' is used as
3   synonymous with domicile." *Id.* at 239-40.   Quoting from a state appellate court decision, the
4   California Supreme Court concluded that "[r]esidence, as used in the law, is a most elusive and
5   indefinite term," and its meaning in any particular statute must be determined by considering the
6   purpose of the act.  *Id.* at 240 (citation omitted).  Examining the legislative history of the statute
7   in question, the state high court determined that the term "resident," as used in the statute at
8   issue before it, meant "domiciliary."  *Id.* at 240-43.

9

10      The Court has not located, and the parties have not identified, any California decision
11   determining the meaning of the term "resident" as used in Section 26150 and its predecessor
12   statutes. Accordingly, as in <u>Smith</u>, the Court has looked to the legislative history of Section 26150
13   and its predecessors to see if the purpose of the residency requirement can be ascertained.

14

15      California's first CWP statute was enacted in 1917.  Although it contained the present good
16   moral character and good cause requirements, it did not contain any residency requirement.
17   Stats. 1917, c. 145, p. 222, § 6.  The statute was subsequently amended three times without the
18   inclusion of a residency requirement.  *See* Stats. 1923, c. 339, p. 698, § 8; Stats. 1947, c. 1281,
19   p. 2793, § 1; and Stats. 1951, c. 1619, p. 3660, § 1.

20

21      In 1953, the precursor to Section 26150, *i.e.*, California Penal Code § 12050 ("Section
22   12050"), was enacted. Stats. 1953, c. 36, p. 656, § 1. As enacted, Section 12050 did not include
23   a residency requirement.  *Id.*  However, in 1969, Senate Bill 1272 passed, which amended Section
24   12050 to add to the good moral character and good cause requirements for the issuance of a CWP
25   the prong 1 requirement that the applicant be "a resident of the county." Stats. 1969, c. 1188,
26   p. 2318, § 1.  The bill was sponsored by the Attorney General of the State of California, and it was
27   "intended to stop 'shopping' for permits throughout the state." (*See* Enrolled Bill Memorandum
28   to Governor for SB 1272 dated August 20, 1969, signed by the Legislative Secretary with a

13

1 | recommendation to "Approve.").

2

3      Before Senate Bill 1272 was signed by then Governor Ronald Reagan on August 30, 1969,

4 | the Attorney General and Assistant Attorney General of the State of California sent the Governor

5 | a memorandum on August 11, 1969, urging him to sign the bill into law and stating:

6

7      The purpose of this bill is to curtail the present practice of "shopping" for concealed

8      weapons permits throughout the state.  It is now common practice for citizens to

9      obtain these permits from law enforcement agencies in jurisdictions hundreds of

10      miles from their residence.

11

12      Senate Bill 1272 would require that an applicant obtain his permit from the sheriff

13      or a chief of police within the county of his residence.  It would also help to insure

14      that permits are not granted improvidently.  Law enforcement agencies near the

15      residence of the applicant are obviously in a much better position to evaluate the

16      background, reputation, and need for a weapon, of an applicant.

17

18      Permits to carry concealed weapons should, of course, be restricted to those who

19      are stable and have demonstrated a genuine need to carry a concealed weapon.

20      This bill will help to insure that the issuance of these permits is confined to this class

21      of persons.

22

23      Similarly, three days earlier on August 8, 1969, the District Attorney of Alameda County

24 | wrote to Governor Reagan on behalf of the California Peace Officers' Association and the District

25 | Attorneys' Association of California and urged the Governor to approve Senate Bill 1272, stating:

26

27      This requirement of residency will assist law enforcement in effectively

28      ascertaining just who within their county does possess such a permit, and these are

14

1    the officials who are most likely to know whether the applicant does in fact possess

2    that good moral character which must be demonstrated in order to obtain such a

3    license.[10]

4

5    Thus, the addition of a residency requirement for the CWP statute was motivated by a

6    desire to ensure that such permits were issued only to persons who actually lived within the

7    counties in which the permits were sought.  The bill's proponents believed that an adequate

8    assessment of the good moral character and good cause requirements was possible only if an

9    applicant resided within the county of application.  Given the legislative purpose behind the

10   imposition of the residency requirement effectuated by the passage of Senate Bill 1272, it appears

11   that the statute's newly-added use of the term "resident" was intended to embody a concept akin

12   to that of domiciliary.

13

14   That conclusion is buttressed by a subsequent amendment to Section 12050.  In 1997,

15   Senate Bill 146 passed and was signed into law.  Stats. 1997, c. 408, § 1 (S.B. 146).  Under

16   preexisting law, a police chief could issue a CWP to both residents of his city and residents of the

17   county at large.  The amendment effected by Senate Bill 146 took away from city police chiefs the

18   ability to issue CWPs to persons who did not reside in their cities but who resided in the county

19   in which the city was located.  The bill's sponsor noted his intent to keep "local control for issuing

20   a [CWP] where it belongs." (*See* California Bill Analysis, S.B. 146 Assem., 7/08/1997, available

21   on WESTLAW.)  "The impetus for the bill was to prevent a northern California police chief from

22   issuing permits to non-city residents who resided in the county." (*See* California Bill Analysis, A.B,

23   2022 Sen., 6/30/1998, available on WESTLAW.)  Thus, California's Legislature amended the CWP

24   statute for the purpose, once again, of ensuring that the local officials who assessed CWP

25

26   ─────────────────

        [10]     Neither party addressed the legislative history of Section 26150 in their briefing. The

27   Court has conducted its own research on this issue, and copies of the legislative history

28   documents for Senate Bill 1272 discussed herein were obtained by the Court from the California
     State Archives.

15

1  applications would be appropriately postured to do so, *because the applicants actually resided*
2  *within their jurisdictions*.

3

4      Section 12050 was amended numerous times thereafter in respects not germane here.  In
5  2008, Section 12050 was amended to include the alternate prong 2 "principal place of business
6  or employment" language, as well as to, *inter alia*, impose a training requirement and require
7  licensing authorities to publish and make available a written policy and give written notice
8  regarding the action taken on an application or renewal application within specified time frames.
9  Stats. 1998, c. 910, § 1 (A.B. 2022); 1998 Cal. Legis. Serv. Ch. 910 (A.B. 2022) (West).  This
10 amendment expanded the category of person able to apply for CWPs to include an alternative
11 category, *i.e.*, those who were not domiciled within a county but who spent a substantial portion
12 of their time working within the county.  The California Legislature again evidenced a desire that
13 CWPs be issued only to persons who actually were physically present within a county to a
14 significant degree.

15

16     Section 12050 was amended four more times after that, again in ways not germane here.
17 In 2010, Section 12050 was repealed and continued without substantive change, with its text split
18 into separates statutes and renumbered, in a new Part 6 of the California Penal Code.   The
19 portions of Section 12050 relevant here were renumbered as Section 26150.

20

21     C.    The VCSO's Application Of Section 26150 Was Reasonable.

22

23     It is clear that whether or not to issue a CWP pursuant to 26150 rests within the discretion
24 of the local issuing authority, here, the VCSO.  By its terms, the statute makes such discretion
25 explicit: "when a person applies for a [CWP], the sheriff of a county *may* issue a license to that
26 person upon proof of all of the following. . . .  Section 26150(a) (emphasis added).  Ninth Circuit
27 and California courts that have considered this "may" language in Section 12050(a) -- the
28 predecessor to Section 26150(a) -- have drawn the same conclusion, *to wit,* the statute "explicitly

16

1  grants discretion to the issuing officer to issue or not issue a license to applicants meeting the

2  minimum statutory requirements."  Erdelyi v. O'Brien, 680 F.2d 61, 63 (9th Cir. 1982) (holding

3  that applicants for a CWP in California do not have a property interest in obtaining such permits

4  that is protected by federal due process); *see also* Gifford v. City of Los Angeles, 88 Cal. App. 4th

5  801, 805, 106 Cal. Rptr. 2d 164 (2001) (observing that "Section 12050 gives 'extremely broad

6  discretion' to the sheriff concerning the issuance of concealed weapons licenses") (citation

7  omitted); Nichols v. Cnty. of Santa Clara, 223 Cal. App. 3d 1236, 1241, 273 Cal. Rptr. 84 (1990)

8  ("In light of this statute's delegation of such broad discretion to the sheriff, it is well established

9  that an *applicant* for a license to carry a concealed firearm has no legitimate claim of entitlement

10  to it under state law, and therefore has no 'property' interest to be protected by the due process

11  clause of the United States Constitution.").

12

13      As noted earlier, no case specifically interprets the meaning of "resident" as used in Section

14  26150, and the statute lacks its own definition.  The VCSO, interpreting "resident" to mean a

15  status akin to "domiciliary" under California law, concluded that plaintiff does not satisfy the

16  Section 26150 residency requirement.  The question before the Court is whether that application

17  of Section 26150 was an unreasonable exercise of the VCSO's discretionary authority under the

18  statute.

19

20      Plaintiff contends that, because Section 26150 was enacted many years after the California

21  Supreme Court's decision in Smith, the California Legislature's use of the term "resident" in

22  Section 26150 must be construed in accordance with the Smith decision.  Plaintiff argues that,

23  because Smith existed at the time Section 26150 was enacted, the California Legislature would

24  have used the term "domiciliary" in Section 26150, rather than "resident," had it intended the

25  statute to impose a residency requirement akin to the concept of domicile.  Plaintiff asserts that

26  the VCSO has acted wrongfully, and abused its discretion, in adopting an interpretation of

27  "resident" for purposes of Section 26150 that is "akin to Domicile."  (Motion at 1; *see also id.* at

28  4 -- "Defendant has changed the statutory definition of resident and instead uses Domicile"; Reply

17

1  at 2 -- "the Sheriffs' [*sic*] ruling goes far beyond the legislative intent and the Supreme Court

2  ruling [in <u>Smith</u>] and seeks to amend the law to serve his own purpose [by] requiring what is

3  essentially, proof of domicile.")

4

5      As the California Supreme Court made clear in <u>Smith</u>, a California statute's use of the term

6  "resident," without definition, is ambiguous, because statutes frequently employ the terms

7  "resident" or "residence" with the intended meaning of "domiciliary" or "domicile." 45 Cal. 2d at

8  239.  Contrary to plaintiff's argument, the <u>Smith</u> decision did not establish a hard and fast rule

9  that, henceforth, any undefined use of the term "resident" in a California statute must be deemed

10  to unambiguously embody the concept of "residence," of which a person may have many, and not

11  of "domicile," of which there may be only one.  Indeed, the California Supreme Court concluded

12  just the opposite, *to wit*, given the "elusive and indefinite" nature of the term "resident" when left

13  undefined, its meaning in any given statute requires a consideration of the purpose of the statute.

14  *Id.* at 240.  Thus, it was not unreasonable for the VCSO to conclude that the term "resident," as

15  used in Section 26150, was subject to interpretation.

16

17      As <u>Smith</u> establishes, there is a long history of California courts interpreting the term

18  "resident" in California statutes to mean "domiciliary."  For example, as noted in <u>Smith</u>, 45 Cal.

19  2d at 239, California Government Code §§ 243 and 244 set forth California's "basic rules"

20  regarding domicile.  These statutes are part of the portion of the California Government Code

21  related to the "Sovereignty of the State" (Chapter 1) and its "Rights Over Persons" (Article 5).

22  Section 243 states that, in law, every person has a "residence."  Section 244 defines "residence"

23  to mean, in effect, domicile, *to wit*, it is the "place where one remains when not called elsewhere

24  for" work or other "special or temporary purpose," and there "can only be one residence," which

25  "cannot be lost until another is gained."  Given this broad provision, it seems that the California

26  statutory scheme generally contemplates that a "resident" is a "domiciliary," absent an indication

27  otherwise.  *See* <u>Fenton v. Bd. of Dirs. of the Groveland Cmty. Servs. Dist.</u>, 156 Cal. App. 3d 1107,

28  1113-15, 203 Cal. Rptr. 388 (1984) (affirming trial court's interpretation of the term "residing"

18

1    used in California Government Code § 61200 to mean "domiciled," relying on both <u>Smith</u> and the
2    "basic rules" set forth in Government Code § 244).

3

4           Six years after <u>Smith</u> was decided, in <u>Burt v. Scarborough</u>, 56 Cal. 2d 817, 17 Cal. Rptr. 146
5    (1961), the California Supreme Court considered the use of the term "reside" in a venue provision
6    -- California Code of Civil Procedure § 395.  The state high court noted that there was a history
7    of California courts construing the term to mean "domicile."  <i>Id.</i> at 820-21.  Significantly, as
8    plaintiff does here, the appellant argued that, based on the issuance of the <u>Smith</u> decision, the
9    state high court should adopt a construction based on <u>Smith</u>'s description of the dual or multi-
10   residence concept sometimes used in connection with "residence."  <i>Id.</i> at 821.  The California
11   Supreme Court declined to do so, observing that:  "The <u>Smith</u> case only reiterates the
12   long-recognized rule that 'residence' is not necessarily a synonym for 'domicile' and that its
13   meaning in a particular statute is subject to varying constructions."  <i>Id.</i>  The California Supreme
14   Court noted that this point "was well recognized when the codes were adopted in 1872."  (<i>Id.</i>
15   (citation omitted).)

16

17          Plaintiff makes the same mistake as the appellant in <u>Burt</u>, namely, overstating the import
18   of the <u>Smith</u> decision.  <u>Smith</u> simply reiterated that "resident" is an "elusive and indefinite term,"
19   the meaning of which must be determined for each statute in which it is used based on legislative
20   history or other indicia of meaning.  <i>See</i> <u>Kirk v. Bd. of Regents of Univ. of Calif.</u>, 273 Cal. App. 2d
21   430, 434-35, 78 Cal. Rptr. 2d 260 (1969) ("despite the fact that the terms residence and domicile
22   are often used synonymously, residence is not a synonym for domicile, and its meaning in
23   particular statutes is subject to differing construction, depending on the context and purpose of
24   the statute in which it is used"); <i>see also, e.g.,</i> <u>Milton H. Greene Archives, Inc. V. CMG Worldwide,</u>
25   <u>Inc.</u>, 568 F. Supp. 2d 1152, 1179-81 (C.D. Cal. 2008) (<i>quoting</i> <u>Smith</u> and <u>Kirk</u> and looking to the
26   purpose of and implementing regulations for California's Inheritance Law to determine that, under
27   the law, "residence and domicile are synonymous"), <i>aff'd by</i> 692 F.3d 983 (9th Cir. 2012).

28

                                              19

1    In interpreting a statute where the language is clear, courts must follow its plain
2    meaning. . . . However, if the statutory language permits more than one reasonable
3    interpretation, courts may consider various extrinsic aids, including the purpose of
4    the statute, the evils to be remedied, the legislative history, public policy, and the
5    statutory scheme encompassing the statute. . . . In the end, we must select the
6    construction that comports most closely with the apparent intent of the Legislature,
7    with a view to promoting rather than defeating the general purpose of the statute,
8    and avoid an interpretation that would lead to absurd consequences. . . .

9

10   In re Marriage of Amezquita & Archuleta, 101 Cal. App. 4th 1415, 1419, 124 Cal. Rptr. 2d 887
11   (2002) (citation and internal punctuation omitted) (interpreting "residence" as used in California
12   Family Code § 4962 to mean "domicile").

13

14   Following this admonition, the Court has analyzed the legislative history pertinent to Section
15   26150's use of the term "resident." That history evidences an intent that county sheriffs grant
16   CWPs only to those persons who are physically present within their respective counties to an
17   extent consistent with the concept of "domicile."[11] Based on the legislative history located, the
18   Court concludes that it was reasonable for the VCSO to construe Section 26150 to impose a
19   residency requirement "akin to domicile," as plaintiff puts it.[12] Accordingly, as that interpretation

20

21       [11]    That legislative intent also is demonstrated by the subsequent addition of the
22   alternative prong 2 basis, which allows the issuance of a CWP to someone who has his principal
     place of business or employment in a county only if the applicant also spends a substantial period
23   of time in that county engaged in such work or business. Thus, even if someone has his sole
24   place of business or employment in a county, he cannot obtain a CWP unless he also is physically
     present within the county to a significant degree, because otherwise, the county sheriff lacks an
25   adequate basis for assessing the additional good character and good cause requirements.

26       [12]    As plaintiff concedes (Motion at 2 n.2), the VCSO's definition of "resident" is similar
     to the definition used in Government Code § 244, which defines the term to mean "domicile."
27   Plaintiff's reliance (Motion at 4) on a California decision discussing former California Elections Code
     § 200 (now renumbered at Section 349) is puzzling. That statute, like California Government
28   Code § 244, expressly defines "residence," for purposes of California voting matters, as "domicile."

20

1 || appears to comport with California law, the fact of that interpretation alone cannot serve as the

2 || basis for finding the federal constitutional violation required for a cognizable Section 1983 claim.

3

4 ||      The question then becomes whether the VCSO's application of Section 26150's residency

5 || requirement -- as it is interpreted by the VCSO -- is itself constitutionally violative in this case.

6 || As noted earlier, plaintiff has stipulated that he does *not* meet the VCSO's definition of "resident,"

7 || and that stipulated fact has been made a part of a Court Order.  However, in his Motion papers,

8 || plaintiff inconsistently argues that he meets the test for "domicile."  Plaintiff argues that the VCSO

9 || was obligated to find that plaintiff was a domiciliary of Ventura County at the time of the

10 || Application, because he:  owns a home there which "he returns to monthly"; has declared that

11 || his Ventura home is "*one of* [his] permanent homes" (emphasis added); intends to return to the

12 || Oxnard Home and "frequently" does; and has changed his DMV registration and voter registration

13 || to Ventura County.  (Motion at 1-2; Plaintiff Decl. ¶2; Reply at 1, 4, 7.)  Plaintiff asserts that,

14 || because he has purchased a home in Ventura County, registered to vote there, and declares

15 || himself to be a resident of that County, it is constitutionally violative for the "Government" to

16 || inquire any further.  (Plaintiff Decl. ¶ 7.)

17

18 ||      Plaintiff's argument -- that because he recently opted to change his voter registration to

19 || Ventura County, the site of one of his three "permanent" homes, he must be deemed a "resident"

20 || of Ventura County for purposes of Section 26150 -- runs counter to the legislative purpose behind

21 || the addition of the residency requirement to California's CWP statute.  As discussed earlier, the

22 || evolution of the residency requirement through several statutory amendments makes plain the

23 || intent of the California Legislature to ensure that a CWP is issued by a county sheriff only to

24

_____

25 || The fact that this statute includes its own definition of the term "residence," and thus there is no

26 || need to interpret the term, is of no moment here.  As Smith shows, there are many California statutes that do not contain any such internal definition, yet the undefined use of the term

27 || "residence" means "domicile."  In those instances in which a California statute lacks a definition for "resident," Smith instructs that it is incumbent upon courts to construe the meaning of the

28 || term utilizing legislative history and other tools of interpretation.

21

1    someone who actually lives within the county or who spends most of his working time within that

2    county. Critically, plaintiff concedes that there is no county within California within which he

3    spends the majority of his time and that the Oxnard Home is just one of multiple residences in

4    three counties that he considers to be a "permanent" home.[13] Plaintiff, moreover, ignores the

5    undisputed evidence that he did not change his voter registration until *after* the Application was

6    submitted. Plaintiff also ignores his own admissions during his interview by Gonzales, in which

7    plaintiff stated: he and his wife have divided their time between their Santa Clarita, Big Bear, and

8    Oxnard homes; during the month in which the Application was submitted, plaintiff had spent "just

9    several days" at the Oxnard Home; over the prior four months, plaintiff had spent more time at

10   the Santa Clarita home than in Ventura County; it was "currently" "true" that plaintiff did not

11   spend as much time in Ventura County as in Santa Clarita; and under the VCSO's definition of

12   "resident," his place of residence varied "depending on the time of year." Plaintiff's statements

13   to Gonzales also indicated that plaintiff had spent most of his Summer in 2012 at the Oxnard

14   Home but, thereafter, had spent the bulk of his time at the Santa Clarita home.

15

16    Based on plaintiff's statements alone, a reasonable fact-finder could conclude that, at the

17   time of the Application: plaintiff divided his time between his several homes; and while he and

18   his wife apparently had an intent to move out of their Santa Clarita home and thereafter to utilize

19   the Oxnard Home as their primary residence, plaintiff had not yet effectuated such a change of

20   primary residences. Perhaps another fact-finder might conclude otherwise, but the conclusion

21   drawn by Gonzales and the VCSO, based on the evidence of record, plainly was within the realm

22   of reason. Given the substantial discretion accorded California sheriffs under Section 26150 --

23   indeed, encompassing the discretion to deny a CWP even when an applicant actually meets the

24   residency and all other requirements (Erdelyi, 680 F.2d at 63) -- there is no basis for concluding

25   that the VCSO abused its discretion and acted wrongfully in finding that, under Section 26150,

26    _____

27        [13]    "Due to the variable nature of my personal and professional life, it is impossible to

28   pick a County within California where I spend the majority of my time." (Plaintiff Decl. ¶ 6; *see also id.* ¶¶ 4-5.)

22

1  plaintiff did not satisfy the statutory residency requirement and, thus, could not be granted a CWP.

2

3      The Court acknowledges plaintiff's argument that the VCSO's interpretation of "resident"

4  leaves him, in essence, as a man without a domicile, and thus, he is entitled to be the sole arbiter

5  of the county in which he is a "resident" for Section 26150 purposes.  (Reply at 4-5.)  Plaintiff's

6  argument, however, is contrary to fact and law.  Under California law, it is a "well established

7  principle that every person has in law a domicile." Walters v. Weed, 45 Cal. 3d 1, 7, 246 Cal. Rptr.

8  1149 (1988); see also California Government Code § 243.  "To ensure that everyone has a

9  domicile at any given time, the statutes adopt the rule that a domicile is not lost until a new one

10  is acquired." Walters, 45 Cal. 3d at 7.  The conclusion drawn by the VCSO that plaintiff was not

11  domiciled within Ventura County did not leave plaintiff without a domicile; rather, the VCSO

12  reasonably concluded that, as of the time of the Application, the Santa Clarita home was plaintiff's

13  domicile.

14

15      For the foregoing reasons, the Court finds that plaintiff has not met his burden of showing

16  that he is entitled to judgment as a matter of law with respect to the first issue presented by the

17  Motion, i.e., whether the VCSO erred in its interpretation and application of the Section 26150

18  residency requirement in connection with the denial of the Application.  Because plaintiff has failed

19  to do so, he is not entitled to summary judgment.[14]

20

21      D.      Even If The VCSO Unreasonably Applied Section 26150's Residency Requirement,

22              The Remedy Would Not Be An Automatic Award Of A Concealed Weapons License.

23

24      Plaintiff asserts that, if the Court agrees with him that the VCSO erred in its construction

25

26  _____

27      [14]     Due to its conclusion with respect to the residency requirement issue, the Court does
not, and need not, reach the question of whether the denial of the Application violated plaintiff's
28  Second Amendment rights -- a question that was not teed up by the Motion or the parties'
briefing.

23

1   and application of the term "resident" in Section 26150, the VCSO is estopped from any further
2   evaluation of the Application, must be ordered to grant the Application, and must issue plaintiff
3   a CWP. As set forth above, the Court has ruled against plaintiff on the "resident" issue.  But even
4   if the Court had issued plaintiff a favorable ruling on that issue and/or has drawn an erroneous
5   conclusion, the relief requested by plaintiff nonetheless is not available to him.

6

7        Section 26150 contains multiple requirements, in addition to residency, that must be
8   satisfied before a CWP can issue, including training, good moral character, and good cause.  There
9   is no dispute that the VCSO has not assessed these requirements yet, because it found that the
10  requirement of residency within Ventura County had not been met.  The Court finds the VCSO's
11  proffered reason for pretermitting the Section 26150 analysis in plaintiff's case at the residency
12  step to be reasonable; certainly, plaintiff has not shown that it was not.  It would be improper for
13  this Court to dictate to a state municipal entity that it must disregard state law requirements and
14  issue a CWP, even though all of the statutory requisites for it have not yet been found satisfied.

15

16       Moreover, plaintiff can show no harm if the requested relief fails to issue.  It may be that,
17  since the denial of the Application, circumstances have changed, and plaintiff, in fact, is now
18  domiciled in Ventura County and can satisfy the residency requirement.  If so, he may renew his
19  Application and have the additional requisites (good cause, etc.) assessed.  In Gifford, the
20  California Court of Appeal considered an applicant's claim that he was entitled to have his CWP
21  renewed *ad infinitum* based upon the terms of a stipulated judgment.  The police department had
22  denied a third renewal on the ground that the stipulated judgment did not relieve the applicant
23  of the burden of showing "good cause" for the CWP as required by statute.  The California Court
24  of Appeal agreed and reversed a trial court decision ordering that the CWP be issued, stating:

25

26            Our conclusion here is bolstered by the fact that Gifford suffers no legally
27        cognizable harm through our decision.  If he has good cause for a license, he may
28        demonstrate it, and the Police Department must issue one to him pursuant to the

24

1    *Lake* judgment.  If he does not have good cause he is not entitled to the license,

2    and may not complain if he does not receive one.

3

4    88 Cal. App. 4th at 807.  As in Gifford, if plaintiff meets the various statutory requisites for the

5    issuance of a CWP, he may renew his Application and have it considered.

6

7                                          **CONCLUSION**

8

9        For the foregoing reasons, the Court concludes that plaintiff has not shown that he is

10   entitled to summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

11   Accordingly, the Motion must be, and is, DENIED.

12

13       IT IS SO ORDERED.

14

15   DATED: December 31, 2013

16                                          *Margaret A. Nagle*

17                                          ─────────────────────
                                           MARGARET A. NAGLE
                                           UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

                                               25

1  **JONATHAN W. BIRDT, SBN 183908**
2  **Law Office of Jonathan W. Birdt**
   10315 Woodley Ave, Suite 208
3  Granada Hills, CA 91344
   Telephone:  (818) 400-4485
4  Facsimile:   (818) 428-1384
5  jon@jonbirdt.com

6

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10  SIGITAS RAULINAITIS,              )   **CASE NO.  CV 13-2605MAN**
                                     )
11                     Plaintiff,    )   PLAINTIFF'S SUR REPLY RE
                                     )   MOTION FOR SUMMARY
12    vs.                            )   JUDGMENT
                                     )
13                                   )
                                     )
14  VENTURA COUNTY SHERIFFS          )
    DEPARTMENT,                      )
15                   Defendants.     )
16                                   )
                                     )
17                                   )
                                     )
18  _____)

19        While Plaintiff thanks the Defendant for the offer to allow additional briefing,

20  it is not necessary as the cases cited are not applicable here as Plaintiff does not

21  contend a property right. All of the cited authority was before the Supreme declared

22  that a citizen has a fundamental Right to bear arms for self-defense, and Defendant

23  agrees that the only way that right can be exercised is with a permit. As such,

24  discretionary or not, Plaintiff has a right to exercise a fundamental Civil Right so long

25  as he has not prohibiting criminal record and is a resident of the County, something

26  Defendants now don't even mention or dispute.

27

28

            MOTION FOR SUMMARY JUDGMENT OPENING BRIEF BY PLAINTIFF - 1

SER 34

1        Plaintiff submits on the papers with this simple Supreme Court reminder post

2   all of the authority contained in their reply brief:

3        The Second Amendment states: "A well regulated Militia, being necessary to
4        the security of a free State, the right of the people to keep and bear Arms, shall
         not be infringed." U.S. Const. amend. II. In Heller, the Supreme Court struck
5        down the District of Columbia's ban on handgun possession, concluding that
6        **the Second Amendment "guarantee[s] the individual right to possess and
         carry weapons in case of confrontation."** 554 U.S. at 592, 635.
7        U.S. v. Henry (9th Circuit, filed August 9, 2012), No. 11-30181, at 9040
8        (emphasis added)

9        Pursuant to the stipulation of the parties and the order of the Court, this matter
10
    should now be deemed submitted for a determination of whether Defendant has
11
    violated Plaintiffs' rights under the Second Amendment to bear arms for self-defense
12
    outside the home.
13

14

15  June 28, 2013                              /s/
16                                        _____
17                                        Jonathan W. Birdt
                                          Counsel for Plaintiff
18

19

20

21

22

23

24

25

26

27

28

---

MOTION FOR SUMMARY JUDGMENT OPENING BRIEF BY PLAINTIFF - 2

1  Alan E. Wisotsky – State Bar No. 68051
   James N. Procter II – State Bar No. 96589
2  Jeffrey Held – State Bar No. 106991
   WISOTSKY, PROCTER & SHYER
3  300 Esplanade Drive, Suite 1500
   Oxnard, California 93036
4  Phone:  (805) 278-0920
   Facsimile: (805) 278-0289
5  Email:  jheld@wps-law.net

6  Attorneys for Defendant,
   VENTURA COUNTY SHERIFF'S OFFICE
7  (erroneously sued as Ventura County Sheriffs
   Department)

8

9               **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11

12  SIGITAS RAULINAITIS,                 CASE NO. CV13-02605-MAN

13          Plaintiff,                   **DEFENDANT'S REPLY BRIEF**

14      v.                               [Submitted pursuant to Court's 5/31/13
                                         order]
15  VENTURA COUNTY SHERIFFS
    DEPARTMENT,
16
            Defendant.
17

18

19      The Ninth Circuit stated:

20          We affirm because Erdelyi did not have a property or

21          liberty interest in obtaining an initial license to carry a

22          concealed weapon. ¶ Section 12050 [recodified without

23          substantive change in 2010 as Penal Code Section 26150]

24          explicitly grants discretion to the issuing officer to issue or

25          not issue a license to applicants meeting the minimum

26          statutory requirements.

27  *Erdelyi v. O'Brien*, 680 F.2d 61, 63 (9th Cir. 1982).

28  / / /

                              1

1    The Supreme Court unanimously clarified that the mission of a federal court in
2  civil rights matters is to get the correct answer as to controlling precedent. *Elder v.*
3  *Holloway*, 510 U.S. 510 (1994). The issue there was that a plaintiff in a civil rights
4  lawsuit was not able to locate, during the initial briefing stages, a binding appellate
5  decision clearly establishing the impropriety of the defendants' actions sufficient to
6  overcome a qualified immunity assertion. The Ninth Circuit found such a decision
7  but denied the plaintiff the right to use it because the plaintiff's attorney did not find
8  it himself.

9    The Supreme Court held that a federal court will not disregard relevant legal
10  authority irrespective of belated discovery: "[P]recedent … unearthed too late"
11  (510 U.S. at 514) is nonetheless the law and must be obeyed. *Id.* at 516.

12    In the present case, defendant's initial brief did not discuss *Erdelyi* or its
13  progeny. This omission was by oversight but should not stand in the way of the law.

14    It is now unfair to the plaintiff because he has no briefing left. Defendant
15  requests that plaintiff be authorized to file another brief addressing the *Erdelyi* issue.
16  The Court will specify the deadline for plaintiff's third brief. That filing will
17  conclude the briefing.

18    In *Erdelyi*, the plaintiff was an employee of a licensed private investigator,
19  though not herself a licensed private investigator. She had not been issued a
20  concealed weapons license in the past. She applied to the police chief for a license to
21  carry a concealed weapon.

22    The plaintiff brought the suit in federal district court under 42 U.S.C. §1983.
23  The suit alleged that the police chief violated her constitutional rights to due process
24  of law and equal protection of the laws. The district court granted summary judg-
25  ment for the defendant.

26    The Ninth Circuit first addressed property interests. Property interests
27  protected by the due process clause of the Fourteenth Amendment do not arise
28  whenever a person has only an abstract need, desire, or unilateral expectation of a

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-6920

2

1  benefit.  680 F.2d at 63.  Rather, protectable property interests arise from legitimate
2  claims of entitlement defined by existing rules or understandings which stem from an
3  independent source, such as state law.  *Id.*

4      Concealed weapons are closely regulated by the State of California.  *Id.*
5  Whether the statute creates a property interest in concealed weapons licenses depends
6  largely upon the extent to which the statute contains mandatory language which
7  restricts the discretion of the issuing authority to deny license to applicants who claim
8  to meet the minimum eligibility requirements.  Former Section 12050 explicitly
9  granted discretion to the issuing officer to issue or not to issue a license to applicants
10  meeting the minimum eligibility requirements.  *Id.*

11      Section 26150(a) expressly provides that the sheriff of a county "may issue a
12  license."  The word "may" in a statute dealing with an agency's power normally
13  confers a discretionary power, not a mandatory obligation, unless the legislative
14  intent evidences a contrary purpose.  *Dalton v. United States*, 816 F.2d 971, 973 (4th
15  Cir. 1987).  State law is to the same effect; the word "shall" is ordinarily used in laws,
16  regulations, or directives to express what is mandatory, whereas "may," on the other
17  hand, is usually permissive, and the Legislature is presumed to be well aware of this
18  distinction.  *Hogya v. Superior Court*, 75 Cal.App.3d 122, 133 (1977).

19      Where state law gives the issuing authority broad discretion to grant or deny
20  license applications in a closely regulated field, initial applicants do not have a
21  property right in such licenses which is constitutionally protected by the Fourteenth
22  Amendment.  *Erdelyi*, 680 F.2d at 63.  The Ninth Circuit stated, "Erdelyi therefore
23  did not have a property interest in a concealed weapons license."  *Id.*

24      The *Erdelyi* court then turned to the argument that there was a liberty interest
25  in a concealed weapons permit.  Although liberty is a broad and majestic term, it is
26  not all-inclusive.  *Id.*  It includes the right to be free from actions which impose a
27  stigma or other disability which forecloses one's freedom to take advantage of
28  employment opportunities.  *Id.*

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-6920

3

1    The plaintiff in *Erdelyi* could not argue that she had an absolute liberty to carry

2  a concealed weapon.  *Id.*  She claimed that the police chief's denial of her concealed

3  weapons permit foreclosed her freedom to work as a criminal defense investigator

4  because it was dangerous for her to undertake that work without carrying a concealed

5  weapon.  Rejecting this contention, the Ninth Circuit held that the denial was not

6  based on charges of dishonesty, crime, or immorality to which any stigma was

7  attached.  It is undisputed that many people engage in the occupations of private

8  investigator or criminal defense investigator without a concealed weapons license.

9    Although the plaintiff might not have been able to pursue her profession in

10  precisely the way she would have liked, she had not been entirely, or even substan-

11  tially, excluded.  Further, no stigma attaches to the denial of an application to carry a

12  concealed weapon.  Therefore, the plaintiff was held not to have had a liberty interest

13  in obtaining a concealed weapons license.  *Erdelyi*, 680 F.2d at 63-64.

14    In *Association of Orange County Deputy Sheriffs v. Gates*, 716 F.2d 733 (9th

15  Cir. 1983), former deputy sheriffs retired under medical disability brought a civil

16  rights action alleging that they had been unconstitutionally deprived of permits

17  allowing them to carry concealed, loaded weapons.  The Central District granted

18  summary judgment against the deputies, and the Ninth Circuit unanimously affirmed.

19  The holding was that the statute providing for issuance of certificates allowing retired

20  peace officers to carry concealed, loaded weapons did not create an entitlement

21  sufficient to warrant constitutional protection.

22    A property interest in a benefit protected by the due process clause results from

23  a legitimate claim of entitlement created and defined by an independent source, such

24  as state or federal law.  A reasonable expectation of entitlement is determined mostly

25  by the language of the statute and the extent to which the entitlement is couched in

26  mandatory terms.  *Gates*, 716 F.2d at 734.

27    The only restrictions imposed by the relevant statutes in that case were that the

28  agency from which the officer retires issue a certificate indicating whether or not the

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

4

1  officer may carry a concealed weapon and that the privilege of carrying a loaded
2  concealed weapon might be denied or revoked for good cause. But the Ninth Circuit
3  held that the requirement of good cause prior to the denial of a weapon certificate
4  does not create a constitutionally protected liberty interest "because it is not a
5  significant substantive restriction on the basis for the agency's action." *Gates*,
6  716 F.2d at 734.

7      The *Gates* court also rejected the argument that the denial of the permit caused
8  a loss of liberty without due process of law in that their reputations must have been
9  damaged and foreclosed alternative sources of employment. *Id.* Unpublicized
10 accusations do not infringe constitutional liberty interests. By definition, they cannot
11 harm good name, reputation, honor, or integrity. When reasons are not given,
12 inferences drawn from the denial of the concealed weapon request are insufficient to
13 implicate liberty interests. The *Gates* court also wrote, "The right of a retired deputy
14 sheriff to carry concealed weapons is not so fundamental as to warrant constitutional
15 protection apart from its status under state law." *Id.* at 735, n.4.

16     The California appellate court has analyzed the Ninth Circuit's holdings in this
17 regard and found them to be well reasoned. California appellate authority endorsing
18 the Ninth Circuit analysis is provided below.

19     The issue was taken up in *Gifford v. City of Los Angeles*, 88 Cal.App.4th 801
20 (2001). In that case, the plaintiff was an applicant for a concealed firearm license
21 which the Los Angeles Police Department refused to issue. The applicant sought
22 mandate from the superior court, which the superior court granted. But the appellate
23 court unanimously reversed, reinstating the decision of the agency to deny the
24 concealed weapons permit.

25     The *Gifford* court explained:

26         [Penal Code] Section 12050 gives extremely broad
27         discretion to the sheriff concerning the issuance of con-
28         cealed weapons licenses ... and explicitly grants discretion

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

5

1       to the issuing officer to issue or not issue a license to

2       applicants meeting the minimum statutory requirements.

3    *Gifford*, 88 Cal.App.4th at 805 [citing *Erdelyi*].

4       The plaintiff's main argument in *Gifford* was that a stipulated judgment in

5    earlier litigation between the city police department and applicants for concealed

6    firearms licenses relieved the applicant of the statutory obligations, such as showing

7    good cause for licensure. The appellate court disagreed.

8       In the case of *Nichols v. County of Santa Clara*, 223 Cal.App.3d 1236, 1241

9    (1990), the California appellate court explained:

10      In light of this statute's [Penal Code Section 12500]

11      delegation of such broad discretion to the sheriff, it is well

12      established that an applicant for a license to carry a

13      concealed firearm has no legitimate claim of entitlement to

14      it under state law, and therefore has no property interest to

15      be protected by the due process clause of the United States

16      Constitution.

17   *Nichols*, 223 Cal.App.3d at 1241 [citing both *Erdelyi* and *Gates* with approval].

18      Former Penal Code Section 12050(a) was textually indistinguishable from

19   current Penal Code Section 26150. Former Section 12050 provided, "The sheriff of a

20   county or the chief or other head of a municipal police department of any city or city

21   and county, upon proof that the person applying is of good moral character, that good

22   cause exists for the issuance, and that the person applying is a resident of the county,

23   may issue to such person a license to carry concealed a pistol ...." Former Pen. Code

24   §12050, as quoted in *Gifford*, *supra*, 88 Cal.App.4th at 803. The Ninth Circuit's

25   derivation of the conclusion that "Section 12050 explicitly grants discretion to the

26   issuing officer to issue or not issue a license to applicants meeting the minimum

27   statutory requirements" (680 F.2d at 63) was predicated upon the same permissive

28   term "may" carried over into the recodified statute, Penal Code Section 26150.

6

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

1    Based upon these authorities, the Sheriff has the discretion not to issue a
2    license to carry a concealed firearm even to applicants who meet all of the minimum
3    statutory requirements.  Even if the plaintiff in this matter were a Ventura County
4    resident, he would have no constitutionally protected right vindicatable in a §1983
5    action.  This rule of law moots the residency discussion.

6    It has long been recognized that even constitutional rights may be subject to
7    governmental regulation of the time, place, and manner of their exercise.  The
8    Supreme Court has held that even "[t]he most stringent protection of free speech [a
9    bedrock, fundamental constitutional protection] would not protect a man in falsely
10   shouting fire in a theater and causing a panic.  It does not even protect a man from an
11   injunction against uttering words that may have all the effect of force." *Schenck v.*
12   *United States*, 249 U.S. 47, 52 (1919).

13   Mr. Raulinaitis, and all citizens who wish to use sidearms, can lawfully
14   transport them to shooting ranges and game preserves or utilize them freely on
15   private property without concealed weapons licenses.  The high degree of trust
16   associated with concealing a deadly weapon on one's person elsewhere is a
17   reasonable regulation of time, place, and manner as to which the issuing authority has
18   full discretion which cannot be vindicated in a federal civil rights lawsuit.

19   It is therefore respectfully requested that this Court grant dismissal of the
20   action.

21

22   DATED:  June 27, 2013              WISOTSKY, PROCTER & SHYER

23

24

25              By: _____
26                  Jeffrey Held
                    Attorneys for Defendant,
27                  VENTURA COUNTY SHERIFF'S OFFICE

28

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-6920

7

1 | Alan E. Wisotsky – State Bar No. 68051
  | James N. Procter II – State Bar No. 96589
2 | Jeffrey Held – State Bar No. 106991
  | WISOTSKY, PROCTER & SHYER
3 | 300 Esplanade Drive, Suite 1500
  | Oxnard, California 93036
4 | Phone: (805) 278-0920
  | Facsimile: (805) 278-0289
5 | Email: jheld@wps-law.net

6 | Attorneys for Defendant,
  |     VENTURA COUNTY SHERIFF'S OFFICE
7 |     (erroneously sued as Ventura County Sheriffs
  |     Department)
8 |

9 |               **UNITED STATES DISTRICT COURT**

10 |              **CENTRAL DISTRICT OF CALIFORNIA**

11 |

12 | SIGITAS RAULINAITIS,                    CASE NO. CV13-02605-MAN

13 |              Plaintiff,                 **NOTICE OF FILING SEALED**
                                            **EXHIBITS**
14 |       v.

15 | VENTURA COUNTY SHERIFFS
   | DEPARTMENT,
16 |

17 |              Defendant.

18 |

19 |       On June 19, 2013, defendants filed Exhibits C through J to their responsive

20 | brief, as allowed by point 3 of the June 17, 2013, order, under seal.

21 |

22 | DATED: June 20, 2013              WISOTSKY, PROCTER & SHYER

23 |

24 |                                  By: _____

25 |                                       Alan E. Wisotsky
                                          James N. Procter II
26 |                                       Jeffrey Held
                                          Attorneys for Defendant,
27 |                                       VENTURA COUNTY SHERIFF'S OFFICE

28 |

1

1  **JONATHAN W. BIRDT, SBN 183908**
2  **Law Office of Jonathan W. Birdt**
   10315 Woodley Ave, Suite 208
3  Granada Hills, CA 91344
   Telephone:  (818) 400-4485
4  Facsimile:   (818) 428-1384
5  jon@jonbirdt.com

6

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10  SIGITAS RAULINAITIS,              )   **CASE NO.  CV 13-2605MAN**
                                      )
11                  Plaintiff,        )   PLAINTIFF'S RESPONSE RE
12                                    )   MOTION FOR SUMMARY
                                      )   JUDGMENT
13  vs.                               )
                                      )
14  VENTURA COUNTY SHERIFFS           )
15  DEPARTMENT,                       )
                    Defendants.       )
16                                    )
                                      )
17                                    )
                                      )
18  _____  )

19        Defendant does not dispute that the Statute in question states one must be a

20  "resident" of the county to which one applies for a concealed weapons permit, or that

21  Plaintiff meets the definition of resident as set forth by California Supreme Court.  In

22  fact, Defendants own evidence shows that Plaintiff is also a domiciliary and sole legal

23  resident of Ventura County due to his DMV & Voter registration status and his

24  recorded personal interview clearly showing he moved to Ventura and declared it his

25  fixed and permanent Domicile, not just residence.  Instead, the Defendant contends

26  that because he was observed leaving a different home one morning, he must be lying

27  and is subject to criminal prosecution, therefore failing to meet the Sheriffs

28  discretionary definition of apparently denying a permit to anyone observed spending

   a night outside of his County

   PLAINTIFF'S RESPONSE RE MOTION FOR SUMMARY JUDGMENT - 1

1      Put simply, the Sheriffs' duty here is ministerial and he cannot supplant his
2  own discretion or personal feelings with the clearly stated legislative intent.
3  Moreover, had the legislature meant to say domicile, then they could have done so as
4  the statute in question was enacted after the Supreme Court made clear that people
5  can be residents of more than one County, though, such analysis is not necessary as
6  Defendants own evidence establishes Plaintiff is both a resident and domiciliary of
7  Ventura:

8
9          The question is ultimately one of legislative intent, as "[o]ur fundamental task
          in construing a statute is to ascertain the intent of the lawmakers so as to
10         effectuate the purpose of the statute." (*Day v. City of Fontana* (2001) 25
          Cal.4th 268, 272, 105 Cal.Rptr.2d 457, 19 P.3d 1196.) In this search for what
11         the Legislature meant, "[t]he statutory language itself is the most reliable
          indicator, so we start with the statute's words, assigning them their usual and
12         ordinary meanings, and construing them in context. If the words themselves are
          not ambiguous, we presume the Legislature meant what it said, and the statute's
13         plain meaning governs.
14         Martinez v. Combs (2010) 49 Cal.4th 35, 51
15
16    Penal Code § 26150 was added by Stats.2010, c. 711 (S.B.1080), § 6, operative
17  Jan. 1, 2012. Pen. Code, § 26150.  Smith v. Smith, was decided in 1955 and clearly
18  stated "whereas 'residence' connotes any factual place of abode of some permanency,
19  more than a mere temporary sojourn." and "a person may have only one domicile at a
20  given time, but he may have more than one physical residence separate from his
21  domicile, and at the same time."  Smith v. Smith (1955) 45 Cal.2d 235, 239.

22      Clearly, the Sheriffs' definition goes far beyond the legislative intent and the
23  Supreme Court ruling and seeks to amend the law to serve his own purpose requiring,
24  what is essentially, proof of domicile;
25         The County in which a person spends most of his or her time and conducts
26         most of his or her activities.
27
28

1    Plaintiff submits that the Sheriffs' act of exceeding the clear statement of the

2 law violates his second amendment rights insofar that a permit granted under Penal

3 Code § 26150 is the only way Plaintiff can exercise his second amendment rights

4 outside of the home in California.

5    Defendants also clearly misread Penal Code § 26150 suggesting that all of the

6 elements are required, when a simple reading of the statute shows there are two

7 separate grounds for the issuance of a permit:

8
     (3) The applicant is a resident of the county or a city within the county, **or** the
9    applicant's principal place of employment or business is in the county or a city
10   within the county and the applicant spends a substantial period of time in that
     place of employment or business.
11   Pen. Code, § 26150 (Emphasis added)

12    For the first category, Plaintiff need only be a resident of the County. The

13 Second category does not require residency, but does require proof of the criteria set

14 forth therein. Defendant admits this fact at Page 2, line 9, stating that the applicant

15 need only be a resident of the County, though Defendant's analysis of Plaintiff's

16 residency is through the prism of the second basis (employment/business) , not the

17 first (simple residency). Defendant mistakenly asserts that the first category requires

18 some calculus of time spent within the county, whereas only the second category

19 requires this, the first category simply requires "residency" . Regardless, Plaintiff

20 does not assert the second exception for the simple reason that under California law,

21 he is a resident and domiciliary of the County and the observation of a Deputy

22 regarding where he was seen at any particular time does not change the law, or make

23 the Sheriffs' decision any less arbitrary. Smith v. Smith (1955) 45 Cal.2d 235, 239.

24

25

26

27

28

---

1    Moreover, the law is a little confusing, because Government Code Section 244

2    says residence, but the Courts have actually determined that as used therein, it refers

3    to Domicile, not Residence:

4       Because the term "residence" in section 244 has for many years been construed
        by the courts of this state to mean domicile and because the rules set forth in
5       section 244 are basic rules generally recognized for determining domicile, even
6       if the trial court *had* specifically relied upon section 244 it still would have
        interpreted "residing" in Government Code section 61200 to mean
7       "domiciled."

8       Fenton v. Board of Directors (1984) 156 Cal.App.3d 1107, 1114

9       Plaintiff claims to be a resident of only one County, Ventura, and he meets the

10   legal definition of residency as set forth by the Supreme Court.  Defendant has not

11   disputed any of the facts contained in their own interview or in Plaintiffs' declaration

12   submitted with the instant motion.  As such, even taking into account Government

13   Code section 244, Plaintiff has clearly declared that once he moved to Ventura, he

14   opted to designate Ventura as his residence and thereafter sought to exercise his

15   fundamental constitutional rights as a citizen of the United States, a domiciliary of

16   California and a resident of Ventura County.

17      Arguendo, it would be an interesting defense for the Plaintiff to refuse to serve

18   on a Ventura County jury based on the Defendant's residency analysis.  Surely such a

19   defense would not succeed as the Plaintiff has availed himself of the protections and

20   civic duties that run with his declared residency.  Further, in a situation such as the

21   Plaintiff's, wherein he owns, maintains, and frequents residential properties in 3

22   counties, one cannot envision a scheme where anyone but the Plaintiff himself can

23   decide which county he shall designate as the county of his "residence".

24      A scenario under which the Plaintiff would need to plead his case to two or

25   more county governments; and given the various attitudes those governments could

26   have on this issue, the possibility could exist where no county accepts the Plaintiffs

27   choice as his county of residence or perhaps all of them would accept it.  Would then

28   the plaintiff be subject to jury duty service in all of those counties?  The only scenario

1   that operates with any finality is that the Plaintiff is the only party that can possibly

2   make this choice where one utilizes homes in multiple counties as mandated by

3   California law

4          As shown from defendants own exhibits, Plaintiff has moved to his new home

5   in Ventura with his wife staying in Santa Clarita while that property is being worked

6   on and prepared for rental and then she will move to Ventura with him also becoming

7   a resident. (Exhibit C, Page 19).  Plaintiffs two children have recently moved out and

8   gone to college thus prompting a change in living arrangements and needs, leading to

9   their decision to downsize and move to Ventura and rent out the Santa Clarita home

10  after one of their sons completes his studies at CSUCI and moves out from the shared

11  Oxnard home. All  of these actions are consistent with Plaintiffs move and his

12  decision to register to vote and declaring Ventura not only his residence, but also his

13  domicile, when he changed his permanent and legal address to Ventura County with

14  the department of motor vehicles.  (Exhibit C at Page 22).

15         One's intent can be determined by one's acts. (*Chapman v. Superior Court*
16      (1958) 162 Cal.App.2d 421, 426, 328 P.2d 23.) It is also clear, however, that
        the declarations of the party involved must be taken into consideration when
17      the issue of domicile is involved. (*In re Marriage of Leff* (1972) 25 Cal.App.3d
        630, 642, 102 Cal.Rptr. 195; *Estate of Phillips, supra,* 269 Cal.App.2d 656,
18      659, 75 Cal.Rptr. 301.) It is also established that the application of these factors
19      in determining " '[t]he question of residence or domicile is a mixed question of
        law and fact, and the determination of the trial court, upon conflicting
20      evidence, is conclusive upon this court. [Citations.]' [Citations.]" (*Estate of
        Phillips, supra,* 269 Cal.App.2d at pp. 659–660, 75 Cal.Rptr. 301.) Therefore,
21      the issue raised by appellant is in reality a substantial evidence question.
22      In the instant case, there is ample evidence to support the trial court's
        conclusion on this issue. The evidence clearly established that when respondent
23      moved to Big Oak Flat in 1949 it became her domicile. Thereafter, her intent
24      which was manifested by her declarations at trial, and her actions as manifested
        by her consistent listing of the Big Oak Flat address as her residence, and the
25      fact that she consistently returned to the property *1118 to check on its **396
26      welfare all support the trial court's conclusion that respondent's domicile was in
        fact her Big Oak Flat residence. There being substantial evidence to support the
27      trial court's conclusion on this issue, appellant's contentions must fail.
28      Fenton v. Board of Directors (1984) 156 Cal.App.3d 1107, 1117-18

1    More time is not needed to consider the application because Defendants have
2    conducted a detailed background investigation, and have had all of the information
3    necessary to make a determination if Plaintiff failed to meet any other criteria for an
4    application for a permit.  Deputy Gonzalez, who claims to have budget problems
5    arranged for two full days of surveillance and his attorney had ample time to present
6    any alternative grounds to the Court upon which the denial could be based.

7        There is no forfeiture because the Defendant has not even made a minimal
8    effort at showing there could be an alternative basis for denial, or explained what they
9    would do that they have not already done that would prohibit Plaintiff from being
10   issued a concealed weapons permit.  Defendant has used up the allotted statutory
11   time; denied the application in violation of Plaintiff rights, and then stipulated to
12   present this matter to the Court.  If there were a genuine alternative basis to deny the
13   motion, then defendants could have conducted discovery, or even simply offered
14   some good faith representation as to a concern or basis they had for denial of the
15   application other than residency.

16       It is that failure to exercise due care that brings them here today as there is no
17   doubt Plaintiff, a licensed attorney, County resident and lawful gun owner is not a
18   recently released armed robber as defendant suggests.  In fact, a review of the
19   interview conducted and attached shows that a detailed background investigation was
20   conducted into both issues of good cause and moral character and as Defendant urges
21   common sense analysis in lieu of clearly legal analysis, common sense dictates that
22   Defendants have had ample time and opportunity to make even a simple offer of
23   proof that they had some concern about either.  Additionally, Plaintiff has submitted
24   to the fingerprinting process that is a part of the Defendant's procedure for approving
25   applications and has ostensibly passed the D.O.J. background check evidenced by the
26   fact that all of Defendant's communications heretofore are silent on this issue, nor
27   was Plaintiff's application denied on this basis.

28

1    Defendants own evidence shows that Plaintiff is a resident of Ventura County,

2  is registered to vote in Ventura County and his legal address with the state of

3  California according to the DMV is in Ventura County.  Because Plaintiff owns

4  residences in which he spends time in other counties, travels, or sleeps elsewhere

5  does not change the law or his legal status, despite Defendants threat of criminal

6  prosecution designed to discourage Plaintiff from exercising his fundamental rights.

7  (Exhibit C at Page 23).

8    Therefore Plaintiff prays for the courts declaration that he is in fact a resident

9  of Ventura County for the purposes of his CCW application and that Defendants

10  denial of his permit application was a violation of his fundamental Constitutional

11  Rights under the Second Amendment.

12  June 19, 2013                                        /s/

13                                            _____

14                                            Jonathan W. Birdt
                                             Counsel for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **JONATHAN W. BIRDT, SBN 183908**
2  **Law Office of Jonathan W. Birdt**
   10315 Woodley Ave, Suite 208
3  Granada Hills, CA 91344
   Telephone:  (818) 400-4485
4  Facsimile:   (818) 428-1384
5  jon@jonbirdt.com

6

7                    **UNITED STATES DISTRICT COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9

10  SIGITAS RAULINAITIS,              )   **CASE NO.  CV 13-2605MAN**
                                      )
11              Plaintiff,            )   PLAINTIFF'S OBJECTIONS TO THE
                                      )   DECLARATION OF DANIEL
12  vs.                               )   GONZALEZ
                                      )
13                                    )
    VENTURA COUNTY SHERIFFS           )
14  DEPARTMENT,                       )
                     Defendants.      )
15                                    )
                                      )
16                                    )
                                      )
17                                    )
18  _____ )

19       Plaintiff objects to Paragraphs 24 through 28 and 30 of the declaration of

20  Daniel Gonzalez on the grounds that those paragraphs are double hearsay without

21  exception.

22       Plaintiff objects to paragraph 29 on the grounds that it is argumentative and

23  misstates his own testimony and evidence:  Declarant has specifically stated that

24  Plaintiff stated he was a resident of Ventura, had moved to Ventura after purchasing

25  his condo, had registered to vote and had changed his official address with the DMV

26  to reflect his new home and change of residency.

27  June 19, 2013                              /s/
                                       _____
28                                     Jonathan W. Birdt
                                       Counsel for Plaintiff

         PLAINTIFF'S OBJECTIONS TO THE DECLARATION OF DANIEL GONZALEZ - 1

1  Alan E. Wisotsky – State Bar No. 68051
   James N. Procter II – State Bar No. 96589
2  Jeffrey Held – State Bar No. 106991
   WISOTSKY, PROCTER & SHYER
3  300 Esplanade Drive, Suite 1500
   Oxnard, California 93036
4  Phone:  (805) 278-0920
   Facsimile: (805) 278-0289
5  Email:  jheld@wps-law.net

6  Attorneys for Defendant,
   VENTURA COUNTY SHERIFF'S OFFICE
7  *(erroneously sued as Ventura County Sheriffs*
   *Department)*
8

9                **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  SIGITAS RAULINAITIS,                CASE NO. CV13-02605-MAN

13          Plaintiff,                  [Proposed] ORDER REMOVING
                                        CERTAIN EXHBITIS FROM
14      v.                              CENTRAL DISTRICT'S WEBSITE
                                        DOCKET AND PERMITTING THEM
15  VENTURA COUNTY SHERIFFS            TO BE RE-FILED UNDER SEAL
    DEPARTMENT,
16
            Defendant.
17

18

19          The Hon. Margaret A. Nagle, United States Magistrate Judge and agreed upon

20  Judge for all purposes in the instant litigation, having reviewed the stipulation of the

21  parties, hereby orders as follows:

22          1.      The Central District shall immediately remove from the publicly

23  accessible Central District Website Exhibits "C" through "J" (numbered 3 through

24  10) of website docket entry 16, filed on June 14, 2013, by defendant Ventura County

25  Sheriff's Department, in Case Number 2:13-cv-02605 MAN.

26          2.      Good cause exists for this order based upon the concurrently filed

27  stipulation of the parties requesting removal from the public website of those eight

28  exhibits and their obvious sensitivity as personal information, within the meaning of

                                          1

1 | Federal Rule of Civil Procedure 5.2.

2 |     3.    In lieu thereof, defendant is authorized to forthwith file these same
3 | exhibits under seal, with sealed courtesy copies to chambers in connection with the
4 | pending motion proceeding.

5 |     4.    The only filing on the public website in regard to these redacted exhibits
6 | will be the notation that the exhibits were filed under seal pursuant to Court order.

7 |
8 |     Dated:  June 17, 2013

                                  *Margaret A. Nagle*

9 |
10 |                             MARGARET A. NAGLE
                   UNITED STATES MAGISTRATE JUDGE

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

2

1  Alan E. Wisotsky – State Bar No. 68051
   James N. Procter II – State Bar No. 96589
2  Jeffrey Held – State Bar No. 106991
   WISOTSKY, PROCTER & SHYER
3  300 Esplanade Drive, Suite 1500
   Oxnard, California 93036
4  Phone:  (805) 278-0920
   Facsimile: (805) 278-0289
5  Email:  jheld@wps-law.net

6  Attorneys for Defendant,
     VENTURA COUNTY SHERIFF'S OFFICE
7    *(erroneously sued as Ventura County Sheriffs*
     *Department)*
8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11

12  SIGITAS RAULINAITIS,                        CASE NO. CV13-02605-MAN

13              Plaintiff,                      JOINT STIPULATION TO REMOVE
                                                EXHIBITS FROM CENTRAL
14       v.                                     DISTRICT WEBSITE AND TO
                                                ALLOW THEM TO BE FILED UNDER
15  VENTURA COUNTY SHERIFFS                     SEAL
    DEPARTMENT,
16
                Defendant.
17

18

19       IT IS HEREBY STIPULATED by and between the parties to this action,

20  through their counsel of record, as follows:

21       1.      Exhibits "C" through "J" (three through 10) of Central District Website

22  filing entry 16, on June 14, 2013, by defendant, Ventura County Sheriff's

23  Department, should be removed from the Central District's public website as soon as

24  possible.  The parties would like these to be removed from the public website with

25  urgency because these exhibits contain personal and sensitive information about the

26  plaintiff which, while arguably relevant to the parties' dispute, has no business being

27  publicly accessible.

28  / / /

                                    1

2.    Federal Rule of Civil Procedure 5.2 requires filing under seal or redaction of information in attachments and exhibits which contain private, sensitive data, as do the exhibits sought to be removed from the publicly accessible website by this stipulation.

3.    These exhibits sought to be removed from the public website, "C" through "J", were inadvertently filed publicly when they should have been filed under seal to the attention of the assigned judge, Margaret A. Nagle.

4.    Plaintiff's counsel, Jonathan Birdt, is inaccessible for signature but has fully authorized defendant's counsel to sign his name to this stipulation and to take any other action necessary to accomplish the removal of the objectionable exhibits from the Central District's website docket.

5.    Defense counsel has therefore signed this stipulation for an order removing the eight exhibits from the Central District website and allowing them to be filed under seal with Mr. Birdt's full concurrence given on June 14, 2013, at 1:59 p.m.

6.    The proposed order granting this stipulated request is lodged concurrently herewith.

DATED: June 14, 2013                    WISOTSKY, PROCTER & SHYER

                                        By: _____
                                            Alan E. Wisotsky
                                            James N. Procter II
                                            Jeffrey Held
                                            Attorneys for Defendant,
                                            VENTURA COUNTY SHERIFF'S OFFICE

DATED: June 14, 2013                    By: _____
                                            Jonathan Birdt,
                                            Counsel for Plaintiff
                                            Mr. Birdt authorized me
                                            to sign on his behalf

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

2

1 │ Alan E. Wisotsky – State Bar No. 68051
    │ James N. Procter II – State Bar No. 96589
2 │ Jeffrey Held – State Bar No. 106991
    │ WISOTSKY, PROCTER & SHYER
3 │ 300 Esplanade Drive, Suite 1500
    │ Oxnard, California 93036
4 │ Phone: (805) 278-0920
    │ Facsimile: (805) 278-0289
5 │ Email: jheld@wps-law.net

6 │ Attorneys for Defendant,
    │    VENTURA COUNTY SHERIFF'S OFFICE
7 │ *(erroneously sued as Ventura County Sheriffs*
    │ *Department)*
8 │

9 │ **UNITED STATES DISTRICT COURT**

10 │ **CENTRAL DISTRICT OF CALIFORNIA**

11 │

12 │ SIGITAS RAULINAITIS,                          CASE NO. CV13-02605-MAN

13 │         Plaintiff,                                     [Proposed] ORDER REMOVING
                                                            CERTAIN EXHBITIS FROM
14 │    v.                                                  CENTRAL DISTRICT'S WEBSITE
                                                            DOCKET AND PERMITTING THEM
15 │ VENTURA COUNTY SHERIFFS              TO BE RE-FILED UNDER SEAL
    │ DEPARTMENT,
16 │

17 │         Defendant.

18 │

19 │         The Hon. Margaret A. Nagle, United States Magistrate Judge and agreed upon

20 │ Judge for all purposes in the instant litigation, having reviewed the stipulation of the

21 │ parties, hereby orders as follows:

22 │         1.      The Central District shall immediately remove from the publicly

23 │ accessible Central District Website Exhibits "C" through "J" (numbered 3 through

24 │ 10) of website docket entry 16, filed on June 14, 2013, by defendant Ventura County

25 │ Sheriff's Department, in Case Number 2:13-cv-02605 MAN.

26 │         2.      Good cause exists for this order based upon the concurrently filed

27 │ stipulation of the parties requesting removal from the public website of those eight

28 │ exhibits and their obvious sensitivity as personal information, within the meaning of

1

**SER 56**

1  Federal Rule of Civil Procedure 5.2.

2      3.     In lieu thereof, defendant is authorized to forthwith file these same

3  exhibits under seal, with sealed courtesy copies to chambers in connection with the

4  pending motion proceeding.

5      4.     The only filing on the public website in regard to these redacted exhibits

6  will be the notation that the exhibits were filed under seal pursuant to Court order.

7

8      Dated:_____

                                MARGARET A. NAGLE
9                               United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

2

1   Alan E. Wisotsky – State Bar No. 68051
    James N. Procter II – State Bar No. 96589
2   Jeffrey Held – State Bar No. 106991
    WISOTSKY, PROCTER & SHYER
3   300 Esplanade Drive, Suite 1500
    Oxnard, California 93036
4   Phone: (805) 278-0920
    Facsimile: (805) 278-0289
5   Email: jheld@wps-law.net

6   Attorneys for Defendant,
        VENTURA COUNTY SHERIFF'S OFFICE
7       (erroneously sued as Ventura County Sheriffs
        Department)
8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12  SIGITAS RAULINAITIS,                    CASE NO. CV13-02605-MAN

13            Plaintiff,                    **DEFENDANT'S RESPONSIVE
                                            BRIEF; MEMORANDUM OF
14       v.                                 POINTS AND AUTHORITIES;
                                            DECLARATION OF DANIEL
15  VENTURA COUNTY SHERIFFS                 GONZALES AND EXHIBITS IN
    DEPARTMENT,                             SUPPORT THEREOF**
16
              Defendant.                    [No Hearing Date Set Pursuant to
17                                          5/31/13 Order Adopting Section V of
                                            Joint Case Management Statement]
18

19

20       Defendant VENTURA COUNTY SHERIFF'S OFFICE hereby responds to

21  plaintiff's motion for summary judgment.

22

23  DATED: June 14, 2013              WISOTSKY, PROCTER & SHYER

24
                                      By: _____
25                                         Alan E. Wisotsky
                                           James N. Procter II
26                                         Jeffrey Held
                                           Attorneys for Defendant,
27                                         VENTURA COUNTY SHERIFF'S OFFICE

28

                                       i

1  |  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  |  **I.**

3  |  <u>**LEGAL ISSUES**</u>

4       1.    Did the Ventura County Sheriff's Office correctly ascertain that the

5  plaintiff did not satisfy the residency requirement of Penal Code §26150(a)(3) as a

6  condition for issuance of a license to carry a concealed weapon?

7       2.    If the determination was incorrect, should the Sheriff's Office be

8  permitted to continue processing plaintiff's concealed weapon permit application to

9  determine whether the three remaining statutory criteria (good moral character, good

10  cause, and completion of a training course) are satisfied?

11  |  **II.**

12  |  <u>**MINIMAL CONTACTS WITH THE ISSUING**</u>

13  |  <u>**COUNTY WOULD SUFFICE ONLY IF THE**</u>

14  |  <u>**APPLICANT'S MAIN WORKSITE WERE THERE**</u>

15       Basic canons of statutory construction resolve the parties' dispute.  The

16  California Court of Appeal stated, "The best place to find legislative intent is in the

17  language of the statute." *Astenius v. State*, 126 Cal.App.4th 472, 476 (2005).

18  Essentially to the same effect is the United States Supreme Court's observation that

19  "The interpretation of a treaty, like the interpretation of a statute, begins with its

20  text." *Medellin v. Texas*, 552 U.S. 491, 506 (2008).

21       The relevant statute governing an application for a license to carry a concealed

22  weapon is Penal Code §26150.  Subdivision (a)(3) provides as follows:

23                When a person applies for a license to carry a pistol,

24                revolver, or other firearm capable of being concealed on

25                upon the person, the sheriff of a county may issue a license

26                to that person upon proof of all of the following:

27                . . . .

28  / / /

1

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

1           The applicant is a resident of the county or a city

2          within the county, or the applicant's principal place of

3          employment or business is in the county or a city within the

4          county and the applicant spends a substantial period of time

5          in that place of employment or business.

6       The statutory subdivision provides that there are two methods by which the

7   applicant can be deemed a county resident.  One is if the applicant's principal place

8   of employment is within the county and the applicant spends a substantial amount of

9   time there.  The second means of attaining county residency for purposes of this

10  statutory subdivision occurs when the applicant is a resident of the county.

11      When the two means of attaining residency are contrasted, it is apparent that

12  one is very specific, while the other is quite general.  It is logical to conclude that the

13  two juxtaposed conditions for defining residency speak to opposite ends of the

14  spectrum.  The specific definition allows someone who works for a significant

15  amount of time in the county to be a county resident for concealed weapon issuance

16  purposes.  In contrast, the other means of attaining county residency is the other

17  extreme – spending a majority of a person's time for all purposes within the issuing

18  county.

19      The more specific method is an exception to the initial statement of attaining

20  residency.  Why articulate a specific means if there are other means of attaining

21  residency?  The initial statement is sweeping, general, and all-inclusive:  You must

22  be a resident to qualify for concealed weapons privilege.

23      Common sense suggests that a residence is where a person spends most of his

24  or her time.  California Government Code §244 concurs:

25          In determining the place of residence, the following

26         rules shall be observed:

27          (a)  It is the place where one remains when not

28         called elsewhere for labor or other special or temporary

2

1   purpose, and to which he or she returns in seasons of
2   repose.
3    (b) There can only be one residence.
4    (c) A residence cannot be lost until another is
5   gained.
6   Government Code §244 is in a series of general statutes defining citizenship
7 and residency.  It is therefore suitable to utilize in fortifying the plain meaning of
8 Penal Code §26150(a)(3).
9   Government Code §244 clearly states that "There can only be one residence"
10 (subd. (b)) and that a person can only have one residence at a time.
11   If the average person were asked what it means to be a resident of a county, he
12 or she would intuitively respond that it is the location where you live most of your
13 life.  The average person would not define "residing in a county" as "owning one of
14 many homes there" or "planning to vote there in the future."
15   A glaring fallacy of plaintiff's perspective is that if home ownership were a
16 *sine qua non* of residency, a wealthy person could theoretically purchase a home in
17 all 58 counties, buy some personal effects to place in the homes, and pay for the
18 utilities and maintenance of the homes.  By plaintiff's definition, that would be suffi-
19 cient to make such a wealthy individual a resident of all 58 counties simultaneously.
20 The concept of being a resident of every county in the state simultaneously would
21 draw instinctive guffaws from the average person, as well it should.
22   There is a certain logic behind the statutory condition of being a county
23 resident as a condition precedent to issuance of a license to walk around with a gun
24 under your coat.  Different counties in different areas of the state have very different
25 lifestyles, populations, recreational activities, and mores.  The statute vests the sheriff
26 of each of the 58 counties with making the determination whether prevailing attitudes
27 within that jurisdiction reasonably tolerate and warrant an armed versus an unarmed
28 society.

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

3

1  In a northern California county, such as Humboldt or Del Norte, populations

2  are relatively low and dispersed.  This demographic fact means that there would be a

3  much longer waiting time for the arrival of law enforcement in the event of an attack

4  on a citizen.  Self-help may be more desirable in those areas.

5  In these counties, predominantly rural, with many areas of unspoiled wilder-

6  ness, hunting, fishing, and camping are recreational activities pursued by many of the

7  inhabitants.  Hunting, camping, or fishing in a remote area leaves one defenseless

8  without being properly armed against any attack.

9  In heavily urbanized centers, such as San Diego, Los Angeles, and San

10  Francisco, however, the populations are extremely large.  The number of law

11  enforcement officers is based upon the number of citizens.  So in those counties there

12  is a much greater number of law enforcement officers.  Roads and highways take law

13  enforcement officers almost everywhere in those counties, whereas roads and

14  highways frequently do not exist in the more remote or rural areas of this state.

15  Citizens in highly urbanized areas generally do not recreate by hunting, fishing,

16  and camping in remote areas.  Inhabitants of highly urbanized areas are more exposed

17  to the senseless attacks of random gunmen.

18  It is therefore not at all inconceivable that the sheriff of a rural northern county

19  might be much more lenient in issuing a concealed weapons permit, whereas a sheriff

20  in a highly urbanized county would not.  Plaintiff's argument that a person can be a

21  resident of all counties simultaneously would defeat the logic behind this reasoning

22  which undergirds Penal Code §26150(a)(3).

23  ### III.

24  ### STATEMENT OF FACTS

25  The facts described under this point heading are drawn from two sources.  One

26  is the joint case management statement, as adopted as the order of the Court in the

27  May 31, 2013, case management conference order, page 1, lines 22-28, and page 2,

28  lines 1-2.  The other source of facts is the declaration of Daniel Gonzales, the deputy

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

4

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

1   sheriff who is in charge of the vetting of concealed weapons permits for the Ventura
2   County Sheriff's Office (and exhibits appended thereto).

3       1.      Deputy Gonzales conducted an investigation which revealed that
4   Mr. Raulinaitis was not a Ventura County resident. Since plaintiff did not pass the
5   residence requirement, Deputy Gonzales concluded the investigation with that step.

6             Deputy Gonzales recorded the February 20, 2013, interview with
7   Mr. Raulinaitis, a correct photocopy of which is attached to Deputy Gonzales's
8   declaration as Exhibit C.

9                 Deputy Gonzales:  I will be frank with you. Some of
10                the things that we've learned at this stage in the
11                investigation suggest that you spend more time in Santa
12                Clarita than you do here.

13                Mr. Raulinaitis:  Well, I would say over the last four
14                months that's true . . . probably literally four months almost
15                all the time.

16  Exhibit C to Gonzales declaration, p. 6:9-13.

17      2.      Santa Clarita is a city in Los Angeles County. (Gonzales declaration,
18  p. 2:22.) This was a frank concession by the plaintiff that he had been living in
19  another county for virtually all of the previous four months.

20      3.      During the investigation, Deputy Gonzales discovered that
21  Mr. Raulinaitis's driver's license reflected that his address was in Burbank at
22  142 West Verdugo Avenue. Burbank is a city in Los Angeles County. This turned
23  out to be plaintiff's place of business. A correct photocopy of the driver's license
24  which Mr. Raulinaitis submitted along with his application to carry a concealed
25  weapon is attached to Deputy Gonzales's declaration as Exhibit D. (Gonzales
26  declaration, ¶11.)

27      4.      In the course of his investigation of the plaintiff's residence, Deputy
28  Gonzales requested that the sheriff's records technicians perform a DMV registration

5

1  check. This check of DMV records revealed that Mr. Raulinaitis had four vehicles.
2  Two of them were registered to his residence address in Santa Clarita (Los Angeles
3  County), and the other two were registered to his work address in Burbank (also in
4  Los Angeles County). Photocopies of those DMV printouts are appended as Exhibits
5  E through H to the Gonzales declaration. (Gonzales declaration, ¶12.)

6      5.      The plaintiff's concealed weapons permit application listed his business
7  address as 142 West Verdugo Avenue in Burbank. A correct copy of the concealed
8  weapons permit application is attached as Exhibit I to Deputy Gonzales's declaration.
9  (Gonzales declaration, ¶13.)

10     6.      The plaintiff's application to carry a concealed weapon listed his wife's
11 residence address as 19614 Sunrise Summit in Santa Clarita. While not determina-
12 tive of the applicant's residence address in and of itself, the fact that the individual's
13 spouse resided in another county suggested a connection with spending time in that
14 other county. (Gonzales declaration, ¶14.)

15     7.      During his investigation, Deputy Gonzales learned that Mr. Raulinaitis
16 had sued Los Angeles County for denying him a concealed weapons permit about a
17 year and a half earlier. The plaintiff would have needed to have claimed Los Angeles
18 County residency in order to qualify for a concealed weapons permit in that county.
19 (Gonzales declaration, ¶15.)

20     8.      Deputy Gonzales conducted a surveillance of Mr. Raulinaitis's wife's
21 home from a public street on January 28, 2013. Parking outside the home, he had a
22 clear view of the home listed by Mr. Raulinaitis as his wife's residence. (Gonzales
23 declaration, ¶¶16, 17.)

24     9.      Deputy Gonzales arrived at the Raulinaitis home at 19614 Sunrise
25 Summit in Santa Clarita at 6:15 a.m. At 6:43 a.m., he saw Mr. Raulinaitis leave from
26 that house – he recognized Mr. Raulinaitis from the DMV photo obtained from a
27 statewide database called Cal-Photo. A copy of that photograph is appended to
28 Deputy Gonzales's declaration as Exhibit J. (Gonzales declaration, ¶18.)

6

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

10.    Deputy Gonzales saw Mr. Raulinaitis enter his silver Infiniti, with customized plates reading "SIG ESQ," and load a blue cooler onto the passenger seat of the vehicle. Mr. Raulinaitis then drove away. (Gonzales declaration, ¶19-22.)

11.    Deputy Gonzales then followed Mr. Raulinaitis to 142 West Verdugo Avenue in Burbank, which the plaintiff had listed in the concealed weapons permit application as his business address and which his driver's license listed as his address. (Gonzales declaration, ¶23.) Deputy Gonzales directed his fellow investigator, Ed Jones, to conduct a follow-up surveillance. (Gonzales declaration, ¶24.)

12.    Reserve Deputy Jones reported to Deputy Gonzales that he saw Mr. Raulinaitis leave the home in Santa Clarita at 19614 Sunrise Summit and walk to the same silver Infiniti. Reserve Deputy Jones's observations were made on February 1, 2013, at 6:42 a.m. (Gonzales declaration, ¶¶24-27.)

13.    Deputy Gonzales's personal surveillance of the address given by Mr. Raulinaitis as his wife's, combined with the report of his partner, Reserve Deputy Jones, confirmed that Mr. Raulinaitis stayed at the Santa Clarita residence from which he departed for work on the two mornings of the surveillance. (Gonzales declaration, ¶28.)

14.    Mr. Raulinaitis's only real claim to a Ventura County residency was that he owned a condo in Oxnard. (Gonzales declaration, ¶29.) Deputy Gonzales interviewed the property manager, who stated that she had spoken with Mr. Raulinaitis' wife, Rima. Rima had stated that they were renting the condominium to their son, Justin. (Gonzales declaration, ¶30.)

14.    Mr. Raulinaitis submitted his application for a concealed weapons permit on January 15, 2013. It was not until the date of his interview with Deputy Gonzales, February 20, 2013, that he actually registered to vote in Ventura County. Before that date, Mr. Raulinaitis was not registered to vote in Ventura County. Deputy Gonzales confirmed this by interviewing an employee at Voter Registration. (Gonzales declaration, ¶31.)

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

7

1     15.    The Sheriff's Office defines "residence" as the county in which a person

2 spends most of his or her time and conducts most of his or her activities. (Case

3 Management Order, p. 1:25-26.) The plaintiff agrees that he does not meet the terms

4 of this definition. (Case Management Order, p. 1:27-28.) Plaintiff contends that

5 home ownership makes him a county resident. (Case Management Order, p. 2:1-2;

6 plaintiff's declaration, p. 1:24-28, p. 2:8-10.)

7 **IV.**

8 **SHOULD THE COURT DETERMINE THAT THE**

9 **PLAINTIFF WAS A COUNTY RESIDENT, IT IS**

10 **REQUESTED THAT THE SHERIFF'S OFFICE BE**

11 **ALLOWED TO COMPLETE ITS PROCESSING OF**

12 **THE APPLICATION TO DETERMINE THE OTHER**

13 **THREE CRITERIA**

14     The Ventura County Sheriff's Office receives between 20 and 40 new

15 concealed weapons applications monthly (excluding additional renewal applications).

16 (Gonzales declaration, ¶7.) Deputy Gonzales is the only full-time investigator

17 assigned to evaluating concealed weapon permit applications. (Gonzales declaration,

18 ¶7.) He is allowed two assistants. One works modified/light duty, while the other is

19 a reserve deputy who serves part time. (Gonzales declaration, ¶7.)

20     Because of the staffing restrictions, the Sheriff's Office is constrained to use

21 the most efficient means possible of vetting applicants for concealed weapons.

22 (Gonzales declaration, ¶7.) In order to keep the processing of concealed weapons

23 applications moving expeditiously, Deputy Gonzales examines the residency

24 requirement first. (Gonzales declaration, ¶8.) If the applicant clears that hurdle,

25 Deputy Gonzales then proceeds to devote the necessary time to investigating the

26 other required aspects of concealed weapons permit issuance, such as the applicant's

27 moral character and good cause. (Gonzales declaration, ¶8.)

28 / / /

8

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

1    But if the concealed weapons applicant does not pass the residency require-

2 ment, Deputy Gonzales is able to save a great deal of time and unnecessary work by

3 avoiding investigation of whether the applicant has good cause to carry a concealed

4 firearm and whether he or she has good moral character. (Gonzales declaration, ¶8.)

5 Once the investigation determined that Mr. Raulinaitis was not a Ventura County

6 resident, the good cause, moral character, and firearms training course criteria of the

7 statute were not necessary to investigate. (Gonzales declaration, ¶¶9, 32.)

8    All four elements are statutory criteria – Penal Code §26150(a) requires that all

9 four criteria be satisfied before a person can be issued a license to carry a concealed

10 weapon. Subdivision (1) requires that the applicant be of good moral character.

11 Subdivision (2) requires good cause. Subdivision (4) requires completion of a

12 training course.

13    There is no statutory or appellate invocation of a waiver or a forfeiture

14 doctrine. If the sheriff determines that one of the four criteria is not satisfied, and that

15 turns out to be incorrect, there is no automatic satisfaction provision of the other three

16 elements.

17    Carrying a concealed firearm is an extremely potent and potentially dangerous

18 right. The unseen presence of a handgun can surprise police officers as well as

19 innocent citizens. The issuance of a permit to carry a concealed weapon is an

20 extremely important matter, one that a plaintiff in a civil suit should not be able to

21 obtain by the expedient of forfeiture or waiver.

22    Hypothetically speaking, if a vicious armed robber had served his term and

23 applied for a concealed weapon, the fact that the Sheriff's Office turned out to be

24 mistaken about its interpretation of the legal residency requirement should not allow

25 such a person to carry a concealed weapon. If the applicant wished to carry the

26 weapon for an illegal purpose, a misunderstanding or misinterpretation of a vague

27 statutory term should not work a forfeiture. The right to be conferred by automatic

28 forfeiture carries too great a danger to society to be won by default as civil damages.

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

9

1    There is no time deadline in the statute or in any other provision of law

2  governing this issue. It is not as though the time within which to rule on the

3  concealed weapons application has expired, because there is no time limit.

4  Therefore, plaintiff would in no way be harmed if the matter were remanded to the

5  administrative agency to conduct an inquiry into the remaining three elements of the

6  concealed weapons permit application.

7    Allowing the Sheriff's Office to continue processing the plaintiff's application

8  could be conditioned upon completing the entirety of the investigation of the

9  remaining three elements within some stated period of time, such as 30 days. It is a

10  long-accepted equitable maxim that "The law abhors a forfeiture." *Superior Oil v.*

11  *Devon*, 604 F.2d 1063, 1069 (8th Cir. 1979).

12                          **V.**

13                      **CONCLUSION.**

14    Based upon the foregoing reasons and authorities, it is respectfully requested

15  that the Court rule that the Sheriff's Office's determination that the plaintiff was not a

16  county resident within the meaning of Penal Code §26150(a)(3) was correct and

17  warranted the denial of his concealed weapon application. Alternatively, if the Court

18  disagrees with this requested ruling, defendant requests that the matter be remanded

19  to the defendant to complete the investigation of the other three elements (good moral

20  character, good cause, and completion of a training course) within 30 days after

21  remand.

22

23  DATED: June 14, 2013          WISOTSKY, PROCTER & SHYER

24

25                         By: _____
                                Alan E. Wisotsky
26                               James N. Procter II
                                Jeffrey Held
27                               Attorneys for Defendant
                                VENTURA COUNTY SHERIFF'S OFFICE
28

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

10

SER 68

Re:   *Raulinaitis v. Ventura County Sheriffs Department*
      USDC Case No. CV13-02605-MAN

### DECLARATION OF DANIEL GONZALES

### IN SUPPORT OF DEFENDANT'S

### SUMMARY JUDGMENT MOTION

I, Daniel Gonzales, declare as follows:

1.   I make this declaration of facts based upon information which is personally known to me. If called to testify as a witness to the facts contained in this declaration, I would competently and accurately do so under penalty of perjury of the laws of the United States of America.

2.   I am a deputy sheriff employed by the Ventura County Sheriff's Office. I was employed by the Ventura County Sheriff's Office from January of 2000 through May of 2008 and again from December of 2008 through the present.

3.   My current assignment is concealed weapons investigation. I am a full-time sworn law enforcement officer for the Ventura County Sheriff's Office in that assignment. I have held that position since June of 2012.

4.   On January 15, 2013, the Ventura County Sheriff's Office received an application to carry a concealed weapon from plaintiff, Sigitas Raulinaitis. It was my job responsibility to investigate the application.

5.   California Penal Code Section 26150(a)(3) establishes a residency requirement that the concealed weapons applicant must be a resident of the county or of a city within the county or have a principal place of business in one of the two.

6.   The Ventura County Sheriff's Office's policy, page 1, section 2A, also makes it mandatory that the applicant must be a resident of Ventura County. A correct copy of the entire policy is attached as Exhibit B.

7.   The Ventura County Sheriff's Office receives between 20 and 40 new concealed weapons applications monthly (plus additional renewal applications). I am the only investigator assigned to that position full time (for an anticipated two-year

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

EXHIBIT A, PAGE 11

1   commitment). I am allowed two assistants. One works modified/light duty. The

2   other is a reserve deputy. The services of the reserve deputy are part time. Therefore,

3   the concealed weapons permit investigation and licensure unit is constrained to use

4   the most efficient means possible of vetting applicants for concealed weapons.

5       8.      In order to keep the processing of concealed weapons applications

6   moving expeditiously, I examine the residency requirement first. If the applicant

7   clears that hurdle, then I proceed to process the application by investigating the other

8   required aspects of concealed weapons permit issuance, such as moral character and

9   good cause. But if the concealed weapons applicant does not pass that residency

10  requirement, I am able to save a great deal of time and unnecessary work by avoiding

11  investigation of whether the applicant has good cause to carry a concealed firearm

12  and whether he or she has good moral character.

13      9.      In Mr. Raulinaitis's case, he did not pass the residency requirement,

14  so my investigation concluded with that step. For many reasons my investigation

15  revealed that Mr. Raulinaitis was not a Ventura County resident.

16      10.     Mr. Raulinaitis frankly conceded in my February 20, 2013, interview

17  with him, a correct copy of which is attached as Exhibit C, that he had been living at

18  his home in Santa Clarita for the past four months. "...*I will be frank with you. Some*

19  *of the things that we've learned at this stage in the investigation suggest that you*

20  *spend more time in Santa Clarita than you do here. Well, I would say over the last 4*

21  *months that's true ... probably literally four months almost all the time.*" (Exhibit C,

22  p. 6:9-13, emphasis added). Santa Clarita is a city in Los Angeles County.

23      11.     At the time of my investigation, Mr. Raulinaitis's driver's license

24  reflected that his address was in Burbank (142 W. Verdugo Avenue). Burbank is a

25  city in Los Angeles County. This turned out to be his place of business. A correct

26  photocopy of the California driver's license which Mr. Raulinaitis submitted, along

27  with his application for a concealed weapons permit, is attached as Exhibit D.

28  ///

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

**EXHIBIT A, PAGE 12**

1    12.    The California Department of Motor Vehicles registration checks which
2  I requested that Ventura County Sheriff's Office's records technicians perform
3  revealed that two of Mr. Raulinaitis's vehicles were registered to his residence
4  address in Santa Clarita (Los Angeles County) and that the other two were registered
5  to his work address in Burbank (also in Los Angeles County). Correct photocopies of
6  those DMV printouts are appended hereto as Exhibits E through H.

7    13.    Mr. Raulinaitis's concealed weapons permit application listed his
8  business address as 142 W. Verdugo Avenue in Burbank (Los Angeles County). A
9  correct photocopy of his concealed weapons permit application is attached hereto as
10  Exhibit I.

11    14.    The concealed weapons application lists his wife's residence address as
12  19614 Sunrise Summit in Santa Clarita (Los Angeles County). While not determina-
13  tive of the applicant's residence address in itself, the fact that the individual's spouse
14  resided in another county suggested a connection with spending time in that other
15  county.

16    15.    During my investigation, I learned that Mr. Raulinaitis had sued Los
17  Angeles County for denying him a concealed weapons permit about a year and a half
18  earlier. He would have needed to have claimed Los Angeles County residency in
19  order to qualify for a concealed weapons permit in that county.

20    16.    In order to further ascertain Mr. Raulinaitis's residency, I conducted
21  surveillance of the Santa Clarita address he listed in his concealed weapons permit
22  application.

23    17.    On January 28, 2013, I parked my unmarked police vehicle at the end of
24  the cul-de-sac near the Santa Clarita address listed by Mr. Raulinaitis in his concealed
25  weapons permit application as belonging to his wife – 19614 Sunrise Summit. From
26  the end of the cul-de-sac, I had a clear, unobstructed view of the home listed by
27  Mr. Raulinaitis as his wife's residence.

28  / / /

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

**EXHIBIT A, PAGE 13**

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

1        18.    I arrived at 6:15 a.m.  At 6:43 a.m., I saw Mr. Raulinaitis leave from that

2  house.  I recognized him from his DMV photograph which I obtained from a state-

3  wide database called Cal Photo.  A color copy of that photograph is attached as

4  Exhibit J.

5        19.    I saw Mr. Raulinaitis enter his silver Infiniti (with customized California

6  plates reading "SIG ESQ")  This vehicle was parked backed into the driveway.

7        20.    The vehicle was parked next to his wife's Toyota SUV, also in the

8  driveway.

9        21.    Mr. Raulinaitis loaded a blue cooler onto the passenger seat of his car.

10        22.    Mr. Raulinaitis then entered the driver's seat and drove away.

11        23.    I, along with my partners, Ed Jones and Kevin Donoghue, followed

12  Mr. Raulinaitis in his silver Infiniti to 142 W. Verdugo Avenue in Burbank (which he

13  had listed in his concealed weapons permit application as his business address and

14  which his driver's license, a copy of which he submitted pursuant to the concealed

15  weapons permit application's requirement, listed as his address).

16        24.    At my instruction, my fellow investigator, Ed Jones, conducted a follow-

17  up surveillance and reported the results to me.  Reserve Deputy Jones reported to me

18  that he saw Mr. Raulinaitis leave the home in Santa Clarita (the same address at

19  19614 Sunrise Summit which his application listed as his wife's residence).

20        25.    Detective Jones told me that he saw Mr. Raulinaitis walk to a silver

21  Infiniti, license plate SIG ESQ.

22        26.    Detective Jones further reported to me that he recognized Mr. Raulinaitis

23  from his DMV photograph and from our prior surveillance.

24        27.    Detective Jones's observations about Mr. Raulinaitis were made on

25  February 1, 2013, at 6:42 a.m.

26        28.    My personal surveillance of the address given by Mr. Raulinaitis as his

27  wife's, combined with the report of my partner, Detective Jones, confirmed that

28  ///

EXHIBIT A, PAGE 14

1   Mr. Raulinaitis stayed at the Santa Clarita residence from which he departed for work
2   on the two mornings we conducted surveillance of him at that residence.

3       29.    Mr. Raulinaitis's only claim to Ventura County residency was that he
4   owned a condominium in Oxnard.

5       30.    But when I spoke with the property manager, she told me that she had
6   spoken with Mr. Raulinaitis's wife, Rima, who said that they were renting the
7   condominium to their son, Justin.

8       31.    On the same day as the interview I conducted with Mr. Raulinaitis,
9   February 20, 2013, he registered to vote in Ventura County.  Before that date,
10  including at the time of his concealed weapons permit application, Mr. Raulinaitis
11  was not registered to vote in Ventura County.  I learned this information by inter-
12  viewing an employee at Voter Registration in the Hall of Administration of the
13  Ventura County Government Center.

14      32.    From this investigation it was not reasonable to conclude that
15  Mr. Raulinaitis was a Ventura County resident.  On that basis his concealed weapons
16  permit application was denied.  It was not necessary for me to investigate the moral
17  character and good cause issues.

18      I declare under penalty of perjury under the laws of the United States of
19  America that the foregoing information is true and correct.

20      Executed this ____ day of May, 2013, at Ventura, California.

21

22

23                     DANIEL GONZALES

24

25

26

27

28

WISOTSKY, PROCTER & SHYER
ATTORNEYS AT LAW
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036
TELEPHONE (805) 278-0920

**EXHIBIT A, PAGE 15**

# COUNTY OF VENTURA
## VENTURA COUNTY SHERIFF'S OFFICE
## LICENSE TO CARRY WEAPONS POLICY

Ventura County Sheriff's Office (VCSO) policy titled **"Carry Concealed Weapons License (CCW)"**, is hereby adopted as of 10-28-2011 by Sheriff Geoff Dean and shall constitute the policy and practices of the VCSO relating to licenses and applications for licenses to carry firearms under Cal. Penal Code §§ 26150, *et seq.*

1. **PURPOSE AND SCOPE**

   The Sheriff, upon proof that the person applying is of good moral character, that good cause exists for the issuance, that the person applying satisfies residency or business location requirements, and has completed a course of training (as set forth in this policy) may issue to that person a **carry concealed weapons license (CCW)**. This policy will serve as the Office's written process for the application and issuance of such licenses. Pursuant to Cal. Penal Code § 26160, this policy shall be made accessible to the public.

2. **QUALIFIED APPLICANTS**

   In order to apply for a Concealed Weapons License, the applicant **must** meet the following requirements:

   a. Be a resident of the County of Ventura.

   b. Be at least 18 years of age.

   c. Complete an application that will include substantial personal information, much of which may be subject to disclosure under the California Public Records Act.

   d. Be free from criminal convictions or other prohibiting conditions that would disqualify the applicant from carrying a concealed weapon.

      i. Note: applicants may inquire as to their eligibility to possess and own firearms prior to submitting an application by completing the "Personal Firearms Eligibility Check" form, which can be found at **http://ag.ca.gov/firearms/forms/pdf/pfecapp.pdf**, and submitting it to the California Department of Justice ("DOJ") in accordance with their instructions.

   e. Provide fingerprints and successfully complete a criminal background check.

   f. Be of good moral character. For purposes of this policy, with respect to a determination of 'good moral character' the following factors are taken into consideration: honesty, arrests or negative contacts with law enforcement agencies, conviction of any crime *(including expunged convictions)*, alcohol or drug-related incidents, numerous moving violations of the California Vehicle Code, civil judgments, pending lawsuits, liens, etc.

   g. Show good cause for the issuance of the license. For the purposes of this policy, examples of the existence of good cause include:

      i. A business owner or employee who transports large sums of cash on a regular basis in the course of their business.

      ii. Persons who are in reasonable fear of their safety due to a set of facts that place them in danger, above that of the average citizen, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures.

Page 16
Exhibit B

1  **JONATHAN W. BIRDT, SBN 183908**
2  **Law Office of Jonathan W. Birdt**
   10315 Woodley Ave, Suite 208
3  Granada Hills, CA 91344
4  Telephone:  (818) 400-4485
   Facsimile:   (818) 428-1384
5  jon@jonbirdt.com

6

7                 **UNITED STATES DISTRICT COURT**

8                 **CENTRAL DISTRICT OF CALIFORNIA**

9

10  SIGITAS RAULINAITIS,              )    **CASE NO.  CV 13-2605MAN**
                                     )
11                  Plaintiff,        )    PLAINTIFF'S NOTICE OF LODGING
12                                    )    ORIGINAL DECLARATION
    vs.                              )
13                                    )
14  VENTURA COUNTY SHERIFFS          )
    DEPARTMENT,                      )
15                   Defendants.      )
16                                    )
17                                    )
                                     )
18  ————————————————————  )

19

20       Concurrent with the filing of this document, Plaintiff has sent the original

    hereof to the Clerk of Court for Lodging.
21

22  June 4, 2013                          /s/
23                                        _____
24                                        Jonathan W. Birdt
                                          Counsel for Plaintiff
25

26

27

28

———————————————————————————————————————————————
PLAINTIFF'S NOTICE OF LODGING ORIGINAL DECLARATION - 1

**JONATHAN W. BIRDT, SBN 183908**
**Law Office of Jonathan W. Birdt**
10315 Woodley Ave, Suite 208
Granada Hills, CA 91344
Telephone:  (818) 400-4485
Facsimile:   (818) 428-1384
jon@jonbirdt.com

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIGITAS RAULINAITIS, | CASE NO.  CV 13-2605MAN |
| Plaintiff, | DECLARATION OF SIGITAS RAULINAITIS |
| vs. | |
| VENTURA COUNTY SHERIFFS DEPARTMENT, | |
| Defendants. | |

### DECLARATION OF SIGITAS RAULINAITIS

1. I hereby declare under penalty of Perjury that the facts set forth herein are true and correct under the laws of the State of California.

2. In June of 2012,  I purchased a home in Oxnard, Ventura County, and immediately thereafter moved my personal effects in and later updated my voter registration to Ventura County.  Other than my family members, nobody else rents or uses our home, other than invited guests, and I maintain and pay for all of the utilities at this address.

SER 76

3. I fully intend to cast my vote in the next election for the Ventura County Sheriff and any other open office/referendum/proposition, and am legally entitled to do so.

4. I consider this residence to be one of my permanent homes and place I always intend to return, and frequently do.

5. I do own other homes in two other counties, and frequently travel for business and pleasure.

6. Due to the variable nature of my personal and professional life, it is impossible to pick a County within California where I spend the majority of my time.

7. Moreover, I believe any inquiry beyond the Statutory language above, my own personal declaration, coupled with the physical acts of moving and the legal act of registering to vote are sufficient, and any further inquiry by the Government as to what bed I choose to sleep in on a particular night would be an invasion of my Right of Privacy specifically protected by the California Constitution.

June 3, 2013

_____
Sigitas Raulinaitis

DECLARATION OF SIGITAS RAULINAITIS - 2

1  **JONATHAN W. BIRDT, SBN 183908**
2  **Law Office of Jonathan W. Birdt**
   10315 Woodley Ave, Suite 208
3  Granada Hills, CA 91344
   Telephone:  (818) 400-4485
4  Facsimile:   (818) 428-1384
5  jon@jonbirdt.com

6

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10  SIGITAS RAULINAITIS,            )   **CASE NO.  CV 13-2605MAN**
                                    )
11              Plaintiff,          )   PLAINTIFF'S MOTION FOR
                                    )   SUMMARY JUDGMENT, OPENING
12  vs.                             )   BRIEF; DECLARATION OF SIGITAS
                                    )   RAULINAITIS
13                                  )
                                    )
14  VENTURA COUNTY SHERIFFS         )
    DEPARTMENT,                     )
15              Defendants.         )
                                    )
16                                  )
                                    )
17                                  )
                                    )
18

19

20  **I.  INTRODUCTION**

21       At issue in this case is whether the Sheriff can supplant his own desire in place

22  of what the legislature has stated.  California law and statutes use two terms to define

23  a persons home, residence and domicile and both have very different meanings, but

24  under either standard, Plaintiff is a resident of Ventura County.  The Legislature used

25  the term resident in the Statute at issue herein, but defendant has adopted his own

26  definition that is more akin to Domicile, and upon that basis has apparently found that

27  Plaintiff is not a resident of the County and as such denied him the ability to exercise

28  his second Amendment Right outside of his home.

---

MOTION FOR SUMMARY JUDGMENT OPENING BRIEF BY PLAINTIFF - 1

## II.   <u>FACTUAL BACKGROUND BASED UPON STIPULATED FACTS</u>

The parties have stipulated that Plaintiff Sig Raulinaitis applied for and was denied a permit for a concealed weapon by Defendant because he was not a resident of Ventura County.  Technically, Defendant, the Ventura County Sheriff denied the permit finding that Plaintiff did not meet the Sheriff's own definition of resident, which the Sheriff has stipulated is:

> The County in which a person spends most of his or her time and conducts most of his or her activities.[1]

Plaintiff is a resident of Ventura County, but the Sheriff has declared he is not, and as such, has engaged in an apparent abuse of discretion by creating a more stringent definition than that permitted at law or required by Statute.  In fact, the Sheriff has stipulated that Plaintiff owns and maintains a home in Ventura County. Thus, there is no dispute that Plaintiff has a fixed and permanent abode in Ventura County and Defendant also admits that this address is in fact where Plaintiff is registered to vote as well, thus making Plaintiff both a resident and domiciliary under any State statutory definition as set forth in his declaration attached hereto.

## III.   <u>LEGAL DISPUTE</u>

The Sheriff's office seeks to do two things in this action, first to possibly change the legal definition of residence to the extent he interprets in beyond that permitted by Statute[2] a definition Plaintiff clearly satisfies by maintaining a fixed and permanent home he returns to monthly.  Second, if the Sheriff is found to be wrong, then Defendant seeks a second bite at the apple by seeking permission to find another reason to deny Plaintiff his rights.

---

[1] The Statute requires only that: The applicant is a resident of the county or a city within the county... Pen. Code, § 26150

[2] The Sheriff appears to be modeling Government Code Section 244 which defines residence as "(a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose." while limiting those activities to Ventura County.

SER 79

1    Addressing this second issue first, the Defendant has no basis to revisit the
2    application: Defendant received a complete package, conducted an interview and then
3    made a decision.  Plaintiff is under no obligation to submit a new application and the
4    Sheriff is without authority to reconsider an application he denied within the
5    Statutory time frame.  The Sheriff's office was free to deny on whatever grounds it
6    felt appropriate, but by its' own admission, did not find any other grounds for the
7    denial of the permit, as such, if the definition fails, or even if it stands and Plaintiff is
8    in fact a resident, Plaintiff is entitled to an order mandating that the Sheriff change his
9    definition to comply with the law and to issue Plaintiff his permit.

11    **a.  <u>DOMICILE V. RESIDENCE</u>**

12    California uses two terms to define a persons' home for the purpose of
13    conferring legal rights such as voting and jurisdiction and Plaintiff meets either
14    standard, thus making Defendants denial curious.

15    Courts and legal writers usually distinguish 'domicile' and 'residence,' so that
'domicile' is the one location with which for legal purposes a person is
16    considered to have the most settled and permanent connection, the place where
17    he intends to remain and to which, whenever he is absent, he has the intention
of returning, but which the law may also assign to him constructively; whereas
18    'residence' connotes any factual place of abode of some permanency, more
19    than a mere temporary sojourn. 'Domicile' normally is the more
comprehensive term, in that it includes both the act of residence and an
20    intention to remain; a person may have only one domicile at a given time, but
21    he may have more than one physical residence separate from his domicile, and
at the same time.
22    <u>Smith v. Smith</u> (1955) 45 Cal.2d 235, 239.

1    As the California Supreme Court has stated, a person can have many

2  residences, but only one domicile, and the Statute at issue in this case refers to

3  residence, not domicile:

4      Section 200 of the Elections Code provides: "(a) Except as provided in this
       article, the term 'residence' as used in this code for voting purposes means a
5      person's domicile. [¶] (b) The domicile of a person is that place in which his or
6      her habitation is fixed, wherein the person has the intention of remaining, and
       to which, whenever he or she is absent, the person has the intention of
7      returning. At a given time, a person may only have one domicile. [¶] (c) The
8      residence of a person, as used in this article, is that place in which the person's
       habitation is fixed for some period of time, but wherein he or she does not have
9      the intention of remaining. At a given time, a person may have more than one
10     residence."
       Walters v. Weed (1988) 45 Cal.3d 1, 6
11

12     Defendant has changed the statutory definition of resident and instead uses

13  Domicile, but regardless, has somehow come to the conclusion that Plaintiff does not

14  reside in Ventura County, presumably because Plaintiff has several homes.  Such

15  action is inconsistent with his duties and with the clearly stated legislative intent:

16     In testifying before the Senate Committee on Elections and Reapportionment
       as to the purpose of Senate Bill No. 1653, the bill's author stated: "I'm sure you
17     recognize the fact that a person can have more than one residence but a person
18     cannot have more than one domicile and so [Senate Bill No. 1653] seeks to
       arrive at that particular point.... [The bill attempts] to set forth ... in statutory
19     form for the first time some of the court decisions on the question of domicile
20     and residence ... [so] the Clerks and the voters will know where people should
       vote.... [Senate Bill No. 1653] also defines what's meant by domicile and
21     residence; a question of act and intent required to establish a domicile...."
22     (Transcript of Hg. on Voter Residency and Registration before Sen.Com. on
       Elec. and Reapportionment (Mar. 5, 1976) pp. 6–13.)
23

24     Walters v. Weed (1988) 45 Cal.3d 1, 9

25

26

27

28

#### b. **ABUSE OF DISCRETION**

It is repugnant to Constitutional Jurisprudence to suggest that an elected official could supplant his own wisdom for that clearly stated by the legislature and then exercise that discretion to deny Plaintiff the ability to exercise a Fundamental Right in any lawful manner outside of his home. Under Cantwell v. Connecticut (1940) 310 U.S. 296, and its progeny, States and localities may not condition a license necessary to engage in constitutionally protected conduct on the grant of a license officials have discretion to withhold.  Further, a host of prior restraint cases establish that "the peaceful enjoyment of freedoms which the Constitution guarantees" may not be made "contingent upon the uncontrolled will of an official." Staub v. Baxley (1958) 355 U.S. 313, 322.

#### c. **VIOLATION OF PLAINTIFFS SECOND AMENDMENT RIGHT**

In Heller the Supreme Court held that the Constitution guarantees the individual right to possess and carry weapons in case of confrontation.  District of Columbia v. Heller (2008) 554 U.S. 570 at 592.  "Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in Heller, we held that individual self-defense is "the central component" of the Second Amendment right".   McDonald v. City of Chicago (2010) 130 S. Ct. 3020, at 3037.

In California, the only manner in which a resident of the State can bear arms for self defense outside of the home is with a permit to carry a concealed weapon.  It is illegal to carry an exposed or loaded weapon and federal law prohibits passing within 1,000 feet of any school with a weapon unless it is in a locked container, the person is a law enforcement official engaged in official duties, or as a private citizen, he has a permit to carry a concealed weapon.

1    The Right to Bear Arms outside the home is also a fundamental right and

2   California only recognizes one method for the exercise of this writ, a permit granted

3   pursuant to Penal Code, § 26150 :

4       The Second Amendment states: "A well regulated Militia, being necessary to
        the security of a free State, the right of the people to keep and bear Arms, shall
5       not be infringed." U.S. Const. amend. II. In Heller, the Supreme Court struck
6       down the District of Columbia's ban on handgun possession, concluding that
        the Second Amendment "guarantee[s] the individual right to possess and carry
7       weapons in case of confrontation." 554 U.S. at 592, 635.
8       U.S. v. Henry (9th Circuit, filed August 9, 2012), No. 11-30181, at 9040

9   IV.    **CONCLUSION**

10      Plaintiff submitted a complete application for a concealed weapons permit and

11  submitted for an interview.  After exercising all of the statutory time, Defendant

12  denied the application on the sole ground that Plaintiff was not a resident of Ventura

13  County.  As set forth herein, such decision was in violation of California law, and

14  more importantly, was in violation of Plaintiff's Second Amendment Rights.  As

15  such, Plaintiff respectfully requests that this Court Declare that Plaintiff is a resident

16  of Ventura County and thus entitled to a Permit for a concealed Weapon.

17

18  June 3, 2013                                    /s/

19                                                  _____
                                                    Jonathan W. Birdt
20                                                  Counsel for Plaintiff

21

22

23

24

25

26

27

28

---

MOTION FOR SUMMARY JUDGMENT OPENING BRIEF BY PLAINTIFF - 6

1   **JONATHAN W. BIRDT, SBN 183908**
2   **Law Office of Jonathan W. Birdt**
    10315 Woodley Ave, Suite 208
3   Granada Hills, CA 91344
    Telephone:  (818) 400-4485
4   Facsimile:   (818) 428-1384
5   jon@jonbirdt.com

6

7                     **UNITED STATES DISTRICT COURT**

8                     **CENTRAL DISTRICT OF CALIFORNIA**

9

10  SIGITAS RAULINAITIS,                    )    **CASE NO.  CV 13-2605MAN**
                                            )
11                        Plaintiff,        )    DECLARATION OF SIGITAS
                                            )    RAULINAITIS
12                                          )
13  vs.                                     )
                                            )
14  VENTURA COUNTY SHERIFFS                 )
    DEPARTMENT,                             )
15                         Defendants.      )
16                                          )
                                            )
17                                          )
                                            )
18  _____ )

19

20                   DECLARATION OF SIGITAS RAULINAITIS

21  1. I hereby declare under penalty of Perjury that the facts set forth herein are true

22     and correct under the laws of the State of California.

23

24  2. In June of 2012,  I purchased a home in Oxnard, Ventura County, and

25     immediately thereafter moved my personal effects in and later updated my

26     voter registration to Ventura County.  Other than my family members, nobody

27     else rents or uses our home, other than invited guests, and I maintain and pay

28     for all of the utilities at this address.

_____
                    DECLARATION OF SIGITAS RAULINAITIS - I

3. I fully intend to cast my vote in the next election for the Ventura County Sheriff and any other open office/referendum/proposition, and am legally entitled to do so.

4. I consider this residence to be one of my permanent homes and place I always intend to return, and frequently do.

5. I do own other homes in two other counties, and frequently travel for business and pleasure.

6. Due to the variable nature of my personal and professional life, it is impossible to pick a County within California where I spend the majority of my time.

7. Moreover, I believe any inquiry beyond the Statutory language above, my own personal declaration, coupled with the physical acts of moving and the legal act of registering to vote are sufficient, and any further inquiry by the Government as to what bed I choose to sleep in on a particular night would be an invasion of my Right of Privacy specifically protected by the California Constitution.

June 3, 2013                                    _Original to be lodged_
                                                Sigitas Raulinaitis

1
2
3
4
5

**JONATHAN W. BIRDT**
10315 Woodley Ave, Suite 208
Granada Hills, CA 91344
Telephone:  (818) 400-4485
Facsimile:   (818) 428-1384
jon@jonbirdt.com

6

## UNITED STATES DISTRICT COURT

7

## CENTRAL DISTRICT OF CALIFORNIA

8

9

10

SIGITAS RAULINAITIS,

)

**CASE NO.  CV 13-2605-MAN**

)

11

Plaintiff,

)

[PROPOSED] CASE MANAGEMENT

)

ORDER

12

vs.

)

)

13

)

VENTURA COUNTY SHERIFFS

)

14

DEPARTMENT,

)

15

Defendants.

)

)

16

)

17

_____

)

18

19      Having  considered  the  Joint  Case  Management  Statement  And  Factual

20  Stipulation the Court hereby orders that:

21      1.  The Telephonic Status Conference set for June 11, 2013 is vacated.

22      2.  The following facts are deemed admitted by all parties:

23          a.      Plaintiff applied for and was denied a permit for a concealed
                    weapon by Defendant because he was not a resident of Ventura
24                  County.

25          b.      Defendant defines residence as:  The County in which a person
                    spends most of his or her time and conducts most of his or her
26                  activities.

27          c.      Defendant determined that Plaintiff did not meet the standards for
                    this definition and Plaintiff agrees that he does not meet the terms
28                  of this definition.

[PROPOSED] CASE MANAGEMENT ORDER - 1

      d.     Plaintiff owns and maintains a home in Ventura County.  Plaintiff also maintains homes in Los Angeles and San Bernardino County.

3. In lieu of cross motions for summary judgment Plaintiff will file a motion for summary judgment on June 7, 2013.  Defendant will file a responsive brief on June 14, 2013.  Plaintiff may then file a notice submitting on the briefs, in which case both sides waive oral argument.  Alternatively, Plaintiff may file a reply brief by June 21, 2013.  Such a reply brief shall not exceed the scope of issues raised in Defendant's brief, but Plaintiff may submit evidence along with the reply brief.  Defendant may then file a sur-reply brief by June 28, 2013.  This brief, however, may not contain any evidentiary submissions and must be limited in scope to the contents and issues in Plaintiff's reply brief.  All of these dates carry a three court day grace period.  The matter shall thereafter stand submitted.

4. In the event the Court does not dispose of the entire matter by Summary Judgment, then the parties will meet and confer to agree upon a discovery plan and proposed discovery cut-off and trial dates.

Dated:  May 31, 2013

*Margaret A. Nagle*

_____

Margaret A. Nagle
United States Magistrate Judge

[PROPOSED] CASE MANAGEMENT ORDER - 2

1  **JONATHAN W. BIRDT**
2  10315 Woodley Ave, Suite 208
   Granada Hills, CA 91344
3  Telephone:  (818) 400-4485
4  Facsimile:  (818) 428-1384
   jon@jonbirdt.com
5

6              **UNITED STATES DISTRICT COURT**

7              **CENTRAL DISTRICT OF CALIFORNIA**

8

9  SIGITAS RAULINAITIS,              )   **CASE NO.  CV 13-2605MAN**
10                                   )
11              Plaintiff,           )   JOINT CASE MANAGEMENT
                                     )   STATEMENT AND FACTUAL
12  vs.                              )   STIPULATION
                                     )
13                                   )
   VENTURA COUNTY SHERIFFS           )
14  DEPARTMENT,                      )
                Defendants.          )
15                                   )
                                     )
16                                   )
17  _____ )

18

19  I.  JOINT CASE MANAGEMENT STATEMENT AND FACTUAL
20      STIPULATION

21      Counsel have met and conferred extensively and worked well together to

22  devise a plan for expeditious resolution of this matter and now seek the Court's

23  approval thereof.  Plaintiff contends that Defendant's definition of residency as

24

25  applied to a statutory license to carry a concealed weapon violates State Law and

26  therefore his Rights under the Second Amendment.

27

28

              JOINT CASE MANAGEMENT STATEMENT AND FACTUAL STIPULATION - 1

## II.  BACKGROUND

Plaintiff applied for and was denied a permit to carry a concealed weapon by Ventura County because the Sheriff determined that Plaintiff was not a Ventura County resident under the Sheriff's definition of residence.  Plaintiff contends that the Sheriff's interpretation of the word "residence" requires the applicant to demonstrate that the County is Plaintiffs' "primary residence."  Plaintiff believes that inclusion of that concept is inconsistent with the statutory scheme and Supreme Court authority such that it is not a reasonable exercise of the Sheriff's discretion.

## III.  JOINT STIPULATION OF FACTS

1. Plaintiff applied for and was denied a permit for a concealed weapon by Defendant because he was not a resident of Ventura County.

2. Defendant defines residence as:  The County in which a person spends most of his or her time and conducts most of his or her activities.

3. Defendant determined that Plaintiff did not meet the standards for this definition and Plaintiff agrees that he does not meet the terms of this definition.

4. Plaintiff owns and maintains a home in Ventura County.  Plaintiff also maintains homes in Los Angeles and San Bernardino County.

## IV.  LEGAL DISPUTES

1. The Sheriff contends that he has discretion to define the term resident as he has done.  Plaintiff contends that resident is defined by California law as only requiring some physical abode in the County that is more than a temporary visit.

2. If the Court finds Plaintiff is a resident, does the Sheriff get to revisit the application to approve or deny based upon good cause, or does the Sheriff's prior statutory decision require that he approve Plaintiffs application under the Statute?

JOINT CASE MANAGEMENT STATEMENT AND FACTUAL STIPULATION - 2

1      V.   <u>PROPOSED RESOLUTION</u>

2          In lieu of cross motions for summary judgment(there being few, if any,

3  disputed facts), the parties propose that plaintiff file a motion based upon the

4  stipulated facts, legal disputes and declarations addressing any material the Plaintiff

5  believes necessary for the Court's consideration.  Plaintiff will file the motion on

6  June 7, 2013.  Defendant will file a responsive brief on June 14, 2013, along the same

7  lines.  Plaintiff may then file a notice submitting on the briefs, in which case both

8  sides waive oral argument.  Alternatively, Plaintiff may file a reply brief by June 21,

9  2013.  Such a reply brief shall not exceed the scope of issues raised in Defendant's

10  brief, but Plaintiff may submit evidence along with the reply brief.  Defendant may

11  then file a sur-reply brief by June 28, 2013.  This brief, however, may not contain any

12  evidentiary submissions and must be limited in scope to the contents and issues in

13  Plaintiff's reply brief.  All of these dates carry a three court day grace period.  The

14  matter shall thereafter stand submitted.

15

16      VI.   DISCOVERY & TRIAL

17          In the event the Court does not dispose of the entire matter by Summary

18  Judgment, then the parties will meet and confer to agree upon a discovery plan and

19  trial date.

20

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

SER 90

VII.   SETTLEMENT DISCUSSIONS

Plaintiff has offered to settle this action in exchange for a permit with a waiver of all fees and costs incurred with a confidentiality provision.  Defendant has rejected Plaintiff's offer and believes it is vested with the discretion to adopt its definition of residency.    There is no middle ground upon which the parties could meet that would make exploring settlement via ADR realistic.

May 28, 2013                                            /s/

                                                        _____

                                                        Jonathan W. Birdt
                                                        Counsel for Plaintiff

May 28, 2013                                            /s/

                                                        _____

                                                        Jeff Held
                                                        Counsel for Defendant

JOINT CASE MANAGEMENT STATEMENT AND FACTUAL STIPULATION - 4

(JCGx),APPEAL,CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-08026-MWF-JCG

| | |
|---|---|
| Sigitas Raulinaitis et al v. Los Angeles County Sheriffs Department | Date Filed: 09/28/2011 |
| Assigned to: Judge Michael W. Fitzgerald | Date Terminated: 08/13/2012 |
| Referred to: Magistrate Judge Jay C. Gandhi | Jury Demand: Plaintiff |
| Case in other court: 9TH CCA, 12-56508 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Sigitas Raulinaitis**          represented by **Jonathan Wesley Birdt**
Law Office of Jonathan W Birdt
18252 Bermuda St.
Porter Ranch, CA 91326
United Sta
818-400-4485
Fax: 818-428-1384
Email: jon@jonbirdt.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rima Raulinaitis**          represented by **Jonathan Wesley Birdt**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Los Angeles County**
**Sheriffs Department**
*The*

represented by **Jennifer A D Lehman**
Los Angeles County Counsel
500 West Temple Street
Los Angeles, CA 90012-2713
213-974-1908
Email:
jlehman@counsel.lacounty.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/28/2011 | 1 | COMPLAINT against Defendant Los Angeles County Sheriffs Department. Case assigned to Judge Jacqueline H. Nguyen for all further proceedings. Discovery referred to Magistrate Judge Jay C. Gandhi.(Filing fee $ 350:PAID) Jury Demanded., filed by plaintiffs Sigitas Raulinaitis, Rima Raulinaitis.(ghap) (mg). (Additional attachment(s) added on 10/3/2011: # 1 Ntc of Asgmt, # 2 Civil Cover Sheet) (mg). (Entered: 09/28/2011) |
| 09/28/2011 | | 21 DAY Summons Issued re Complaint - (Discovery) 1 as to Defendant Los Angeles County Sheriffs Department. (ghap) (Entered: 09/28/2011) |
| 09/28/2011 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiffs Rima Raulinaitis, Sigitas Raulinaitis. (ghap) (mg). (Entered: 09/28/2011) |
| 09/28/2011 | 3 | NOTICE TO PARTIES OF ADR PROGRAM filed.(ghap) (Entered: 09/28/2011) |
| 10/11/2011 | 4 | PROOF OF SERVICE Executed by Plaintiff Sigitas Raulinaitis, Rima Raulinaitis, upon Defendant Los Angeles County Sheriffs Department served on 10/6/2011, answer due 10/27/2011. Service of the Summons and Complaint were executed upon Kathleen Camacho in compliance with California Code of Civil Procedure by personal service. Original Summons NOT returned. (Birdt, Jonathan) (Entered: 10/11/2011) |

| 10/26/2011 | 5 | NOTICE of Interested Parties filed by Defendant Los Angeles County Sheriffs Department, identifying Sigitas Raulinaitis, Rima Raulinaitis, Jonathan Birdt, Los Angeles County Sheriff's Department. (Lehman, Jennifer) (Entered: 10/26/2011) |
| --- | --- | --- |
| 10/28/2011 | 6 | ANSWER to Complaint - (Discovery), Complaint - (Discovery) 1 filed by Defendant Los Angeles County Sheriffs Department.(Lehman, Jennifer) (Entered: 10/28/2011) |
| 10/31/2011 | 7 | ORDER FOR RULE 26 JOINT SCHEDULING REPORT by Judge Jacqueline H. Nguyen, (bp) (Entered: 10/31/2011) |
| 11/21/2011 | 8 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial 3, filed by Defendant Los Angeles County Sheriffs Department.. (Lehman, Jennifer) (Entered: 11/21/2011) |
| 11/29/2011 | 9 | ORDER RE JURY TRIAL and ORDER/REFERRAL TO ADR PROGRAM by Judge Jacqueline H. Nguyen: Final Pretrial Conference set for 8/6/2012 10:30 AM and Jury Trial set for 9/4/2012 08:30 AM before Judge Jacqueline H. Nguyen. (Attachments: # 1 ADR Referral) (ama) (Entered: 11/29/2011) |
| 01/18/2012 | 10 | NOTICE of Related Case(s) filed by Defendant Los Angeles County Sheriffs Department. Related Case(s): 11CV-08026 JHN (JCGx), 10CV-08377 JAK (JEMx), 11CV-06154 SJO (JCx) (Lehman, Jennifer) (Entered: 01/18/2012) |
| 01/18/2012 | 11 | NOTICE of Related Case(s) filed by Defendant Los Angeles County Sheriffs Department. Related Case(s): 11CV-08026 JHN (JCGx), 10CV-08377 JAK (JEMx), 11CV-06154 SJO (JCx) (Lehman, Jennifer) (Entered: 01/18/2012) |
| 01/19/2012 | 12 | AMENDED DOCUMENT filed by Defendant Los Angeles County Sheriffs Department. Amendment to |

SER 94

| | | |
|---|---|---|
| | | Notice of Related Case(s) 11 *amended to include pages 2 and 3 inadvertently left out when the document was converted to PDF format* (Lehman, Jennifer) (Entered: 01/19/2012) |
| 01/19/2012 | 13 | MEMORANDUM of Points and Authorities in Opposition *to request to relate cases* Re: Amended Document (Non-Motion) 12 , Notice of Related Case(s) 10 , Notice of Related Case(s) 11 (Birdt, Jonathan) (Entered: 01/19/2012) |
| 01/20/2012 | 14 | REPLY filed by Defendant Los Angeles County Sheriffs Department to Memorandum of Points and Authorities in Opposition (non-motion) 13 (Lehman, Jennifer) (Entered: 01/20/2012) |
| 01/20/2012 | 15 | REPLY filed by Defendant Los Angeles County Sheriffs Department to Memorandum of Points and Authorities in Opposition (non-motion) 13 (Lehman, Jennifer) (Entered: 01/20/2012) |
| 01/25/2012 | 16 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 08-05 (Related Case) filed. Transfer of case declined by Judge John A Kronstadt, for the reasons set forth on this order. Related Case No. CV 10-08377 JAK (JEMx) (rn) (Entered: 01/25/2012) |
| 05/07/2012 | 17 | NOTICE OF MOTION AND MOTION for Summary Judgment as to Complaint filed by Defendant Los Angeles County Sheriffs Department. Motion set for hearing on 6/11/2012 at 02:00 PM before Judge Jacqueline H. Nguyen. (Attachments: # 1 Proposed Order Granting Defendant's Motion for Summary Judgment)(Lehman, Jennifer) (Entered: 05/07/2012) |
| 05/07/2012 | 18 | NOTICE OF LODGING filed *by Defendant* re MOTION for Summary Judgment as to Complaint 17 (Attachments: # 1 Defendant's Separate Statement of Undisputed Facts & Conclusions of Law)(Lehman, Jennifer) (Entered: 05/07/2012) |
| 05/07/2012 | 19 | |

| | | REQUEST FOR JUDICIAL NOTICE re MOTION for Summary Judgment as to Complaint 17 filed by Defendant Los Angeles County Sheriffs Department. (Lehman, Jennifer) (Entered: 05/07/2012) |
|---|---|---|
| 05/11/2012 | 20 | ORDER OF THE CHIEF JUDGE (#12-042) approved by Chief Judge Audrey B. Collins. IT IS ORDERED, with the concurrence of the Case Management and Assignment Committee, that this case be reassigned from the calendar of Judge Jacqueline H. Nguyen to the calendar of Judge Michael W Fitzgerald for all further proceedings. The case number will now reflect the initials of the transferee Judge CV 11-8026 MWF(JCGx). (sn) (Entered: 05/14/2012) |
| 05/16/2012 | 21 | OPPOSITION opposition re: MOTION for Summary Judgment as to Complaint 17 filed by Plaintiffs Rima Raulinaitis, Sigitas Raulinaitis. (Attachments: # 1 Exhibit Opposition to Separate Statement, # 2 Declaration of Jonathan Birdt)(Birdt, Jonathan) (Entered: 05/16/2012) |
| 05/16/2012 | 22 | DECLARATION of Lawrence Mudgett in support of Plaintiff's opposition MOTION for Summary Judgment as to Complaint 17 filed by Plaintiffs Rima Raulinaitis, Sigitas Raulinaitis. (Birdt, Jonathan) (Entered: 05/16/2012) |
| 05/16/2012 | 23 | MINUTE IN CHAMBERS TRANSFER OF CASE TO JUDGE FITZGERALD by Judge Michael W Fitzgerald: This action has been reassigned to the HONORABLE MICHAEL W. FITZGERALD, United States District Judge. The magistrate judge's assignment remains the same. Please substitute the initials MWF in place of the initials JHN. The case number will now read: CV 11-8026-MWF (JCGx). As documents are routed using the judge's initials, it is important to use the correct initials on all subsequent filings. (See attached Minute Order for further details). All hearing dates will remain as previously set. (jp) (Entered: 05/16/2012) |
| 05/25/2012 | 24 | REPLY in support of LASD's MOTION for Summary Judgment as to Complaint 17 filed by Defendant Los |

SER 96

| | | |
|---|---|---|
| | | Angeles County Sheriffs Department. (Lehman, Jennifer) (Entered: 05/25/2012) |
| 05/25/2012 | 25 | OBJECTIONS TO PLAINTIFF'S EVIDENCE IN OPPOSITION TO re: MOTION for Summary Judgment as to Complaint 17 filed by Defendant Los Angeles County Sheriffs Department. (Lehman, Jennifer) (Entered: 05/25/2012) |
| 05/25/2012 | 26 | NOTICE OF LODGING filed *by Defendant Los Angeles County Sheriff's Department* re Reply (Motion related) 24 (Attachments: # 1 Defendants Los Angeles County Sheriff Department's Rebuttal to Plaintiffs' Separate Statement of Undisputed Facts and Conclusions of Law)(Lehman, Jennifer) (Entered: 05/25/2012) |
| 06/04/2012 | 27 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 08-05 (Related Case) filed. Transfer of case declined by Judge S. James Otero, for the reasons set forth on this order. Related Case No. CV 11-06154 SJO(JCx) (rn) (Entered: 06/04/2012) |
| 06/07/2012 | 28 | MINUTES (IN CHAMBERS) ORDER TAKING motion for Summary Judgment 17 OFF CALENDAR and UNDER SUBMISSION by Judge Michael W Fitzgerald: The Court finds the matter appropriate for submission on the papers without oral argument. The matter is therefore removed from the Court's calendar subject to resetting should the Court determine that oral argument is needed. (jp) (Entered: 06/07/2012) |
| 07/02/2012 | 29 | NOTICE OF RECENT DECISION GRANTING SUMMARY JUDGMENT TO LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ON ISSUES WHICH ARE SUBJECT OF DEFENDANTS' PENDING SUMMARY JUDGMENT re MOTION for Summary Judgment as to Complaint 17 filed by Defendant Los Angeles County Sheriffs Department. (Lehman, Jennifer) (Entered: 07/02/2012) |
| | | |

SER 97

| 07/19/2012 | 30 | MINUTE ORDER IN CHAMBERS by Judge Michael W Fitzgerald. The Final Pre-Trial Conference scheduled for August 6, 2012, at 10:30 a.m. 9 is hereby VACATED pending the Court's decision on Defendant's Motion for Summary Judgment 17 . (kbr) (Entered: 07/19/2012) |
|---|---|---|
| 08/10/2012 | 31 | SUPPLEMENT to MOTION for Summary Judgment as to Complaint 17 filed by Plaintiffs Rima Raulinaitis, Sigitas Raulinaitis. (Attachments: # 1 Supplement)(Birdt, Jonathan) (Entered: 08/10/2012) |
| 08/12/2012 | 32 | TRIAL BRIEF Rima Raulinaitis, Sigitas Raulinaitis.. (Birdt, Jonathan) (Entered: 08/12/2012) |
| 08/12/2012 | 33 | TRIAL BRIEF *Amended* Rima Raulinaitis, Sigitas Raulinaitis.. (Birdt, Jonathan) (Entered: 08/12/2012) |
| 08/13/2012 | 34 | MINUTES (IN CHAMBERS) ORDER GRANTING Motion for Summary Judgment 17 by Judge Michael W Fitzgerald: This matter is before the Court on Defendant Motion for Summary Judgment 17 . The Court found the matter appropriate for submission on the papers without oral argument. The matter was therefore removed from the Court's calendar (Docket No. 28). For the reasons discussed in this Order, the LASD's Motion is GRANTED. Because the LASD's policy implementing the California Penal Code's concealed weapons restriction is constitutionally permissible, both facially and as applied to the Raulinaitises, there has been no violation of their constitutional rights, and there was no resulting violation of 42 USC 1983 and 1988. Accordingly, Defendant is entitled to summary judgment as a matter of law. Defendant's Motion is therefore granted. (MD JS-6. Case Terminated.) (jp) (Entered: 08/13/2012) |
| 08/15/2012 | 35 | NOTICE OF APPEAL to the 9th CCA filed by Plaintiffs Rima Raulinaitis, Sigitas Raulinaitis. Appeal of Order on Motion for Summary Judgment,,, 34 (Appeal fee of $455 receipt number 0973-10814894 paid.) (Birdt, Jonathan) (Entered: 08/15/2012) |

SER 98

| 08/15/2012 | 36 | NOTIFICATION by Circuit Court of Appellate Docket Number 12-56508, 9TH CCA regarding Notice of Appeal to 9th Circuit Court of Appeals 35 as to Plaintiffs Rima Raulinaitis, Sigitas Raulinaitis. (car) (Entered: 08/15/2012) |
| 11/18/2014 | 37 | ORDER from 9th CCA filed re: Notice of Appeal to 9th Circuit Court of Appeals 35 filed by Rima Raulinaitis, Sigitas Raulinaitis, CCA # 12-56508. Appellant's request, filed on November 12, 2014, to summarily remand this action is denied. This case is stayed pending this court's mandate in Peruta v. County of San Diego, 10-56971, or further order of the court. Order received in this district on 11/18/14. (car) (Entered: 11/20/2014) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 12/01/2015 09:54:32 | | | |
| PACER Login: | vc0023:2657855:0 | Client Code: | Raul ... |
| Description: | Docket Report | Search Criteria: | 2:11-cv-08026-MWF-JCG End date: 12/1/2015 |
| Billable Pages: | 4 | Cost: | 0.40 |

## CERTIFICATE OF FILING AND SERVICE

I certify that on December 9, 2015, I electronically filed the foregoing APPELLEE'S SUPPLEMENTAL EXCERPT OF RECORD VOLUME I with the Clerk of the United States Court of Appeals.

I also served the foregoing APPELLEE'S SUPPLEMENTAL EXCERPT OF RECORD VOLUME I on:

JONATHAN W. BIRDT
Law Office of Jonathan W. Birdt
18252 Bermuda Street
Porter Ranch, California 91326
(818) 400-4485

on December 9, 2015, by mailing to said attorney a correct copy thereof, contained in a sealed envelope, with postage paid, and deposited in the U.S. mail at Ventura, California on said day.

_____
MARINA PORCHE, CSB # 162809
Assistant County Counsel
Attorney for Defendant-Appellee
Ventura County Sheriff Department

Page 1 – CERTIFICATE OF SERVICE